```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
                                                                 :
SECURITIES AND EXCHANGE COMMISSION,                              :
                                                                 :
                            Plaintiff,                           :
                                                                 :         21-cv-4777 (LJL)
              -v-                                                :
                                                                 :         MEMORANDUM AND
HARMEL S. RAYAT and RENOVACARE INC.,                             :              ORDER
                                                                 :
                            Defendants.                          :
                                                                 :
-----------------------------------------------------------------X
```

LEWIS J. LIMAN, United States District Judge:

Defendant Harmel S. Rayat ("Rayat") moves for a protective order, pursuant to Federal Rule of Civil Procedure 26(b)(2)(C) and 26(c)(1)(D), relieving him from answering Requests Nos. 1-23, and 28-31 in the Request for Production ("Requests") served by the United States Securities and Exchange Commission ("SEC" or "Plaintiff") on March 30, 2022.  Dkt. No. 55.

The Complaint in this action charges Rayat and the company of which he was the controlling shareholder, RenovaCare, Inc. ("RenovaCare" and collectively with Rayat, "Defendants") with committing securities fraud in violation of Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rules 10b-5(a), (b), and (c), promulgated thereunder, 17 C.F.R. § 240.10b-5(a), (b), and (c).  Dkt. No. 1.  Rayat is a Canadian citizen, and RenovaCare is a Nevada corporation that at the relevant time was headquartered in New York, New York.  In broad strokes, the Complaint alleges that, during the time period July 2017 until January 2018, Defendants secretly disseminated false and misleading information about RenovaCare (and another company of which Rayat was also the controlling shareholder ("Company A")) through an online financial publishing company, StreetAuthority, LLC ("StreetAuthority"), which was owned and operated by a long-time friend of Rayat without

disclosing Defendants' involvement in disseminating the information. (Rayat allegedly arranged for the payments to StreetAuthority to be made through third parties for the fraudulent purpose of concealing his and his company's involvement). Then, after the stock price of RenovaCare had increased to "historically high prices while StreetAuthority's promotion was active," Rayat and "Rayat's other close associates successfully sold shares" in the company. *Id.* ¶ 80. In January 2018, OTC Markets Group Inc., which supervised the market where RenovaCare's stock was quoted, sent RenovaCare a letter demanding that it make public disclosures concerning its involvement in the promotion. Defendants allegedly made material misrepresentations allegedly denying their involvement in the promotion. The Complaint was filed on May 28, 2021, after a SEC investigation.

Requests 1-19 concern transactions between Rayat and various identified third-party entities in the time period November 1, 2007 to present. Rayat argues that Requests 1-19 call for irrelevant information that is disproportionate to the needs of the case and, accordingly, unduly burdensome because there is no good-faith basis to believe that they would show Rayat profited from a fraud scheme between July 2017 and January 2018. He also argues that the SEC was aware of the transactions during its investigation and elected not to make requests for documents regarding them during the investigative phase. Dkt. No. 55 at 2. Requests 20-22 in part concern SolarWindow, which the parties agree is the Company A referred to in the Complaint and is majority-owned by Rayat. Rayat argues that, to the extent they call for information regarding SolarWindow, Requests 20-22 call for irrelevant information because there is no allegation in the Complaint that he provided false information to StreetAuthority regarding SolarWindow or that he or his associates sold SolarWindow shares during the time period of the Complaint. Dkt. No. 55 at 3. He also argues that the requests are improper because the SEC had ample opportunity to

obtain information about SolarWindow during its investigation and chose not to do so. *Id.* Rayat also argues that Request 23, which calls for communications in the April 2016 to May 2018 time frame with ten different individuals, is unduly burdensome. *Id.* Requests 28-30, which ask for forensic copies of entire cellphones, and Request 31, which asks for six years of tax returns from an entity controlled by Rayat, "present issues of irrelevance, disproportionality, untimeliness, and undue burden similar to those discussed previously." *Id.*

      The SEC responds that the documents are relevant both to its claims and to Rayat's defenses. It explains that Requests 1-19 concern Rayat's financial interests in shares that his associates sold during the alleged scheme, which bears upon his scienter and his motive for participating in the scheme. Dkt. No. 59. For example, information recently obtained in discovery by the SEC tends to show that Rayat had a financial interest in an entity established by a long-time friend and officer manager of Rayat's real estate firm, which sold shares of RenovaCare during the relevant time period. The transactions tend to show that Rayat could profit from the alleged fraud without selling his shares because his associates could sell stock and Rayat could profit by collecting on his financial interests with them. It argues that the requests regarding SolarWindow are relevant because StreetAuthority promoted SolarWindow in the same campaign based upon the same oral agreement between Rayat and StreetAuthority, and Rayat and his associates engaged in similar transactions in its stock. It thus argues that the requests regarding SolarWindow are relevant to the liability issues of scienter and motive as well as to remedial issues. The requests for the forensic copies of Rayat's cellphone and that of an associate are relevant because electronic messaging was a key tool in the alleged scheme and Rayat and the associate failed to produce any such messages. The tax returns are relevant

3

because the entity is the one through which Rayat held his RenovaCare and SolarWindow shares.[1]

Federal Rule of Civil Procedure 26(b)(2)(C) requires a court on motion to "limit the frequency or extent of discovery otherwise allowed by the[] rules" if, among other things, it determines that "the party seeking discovery has had ample opportunity to obtain the information by discovery in the action" or if the discovery is "outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C)(ii), (iii). Rule 26(c)(1)(D) gives the Court authority on motion and for good cause to limit the scope of discovery. Fed. R. Civ. P. 26(c)(1)(D). The burden is on the moving party. *See, e.g.*, *ABC Rug & Carpet Cleaning Serv. Inc. v. ABC Rug Cleaners, Inc.*, 2009 WL 105503, at *2 (S.D.N.Y. Jan. 14, 2009). Rule 26(b)(1), in turn, permits discovery into "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). "Relevance is . . . to be 'construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on' any party's claim or defense." *Mortg. Resolution Servicing, LLC v. JPMorgan Chase Bank, N.A.*, 2016 WL 3906712, at *3 (S.D.N.Y. July 14, 2016) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)). The Court can limit the frequency and extent of discovery otherwise allowed by the Federal Rules if, among other reasons, the discovery is not proportional to the needs of the case, if the burden or expense of the proposed discovery outweighs its likely benefit, and if it is unreasonably cumulative or duplicative. *See* Fed. R. Civ. P. 26(b)(1), (2)(C); *see Flood v. Carlson Rests. Inc.*, 2016 WL 3221146, at *4 (S.D.N.Y. June 7, 2016). "In determining how much discovery should be permitted, courts must balance the need for

---

[1] The SEC also notes that Rayat declined the SEC's officer to limit the burden on him through the use of search terms.

4

information, the information's importance in resolving the issues and the relief requested with the burden of discovery." *Lloyd v. J.P. Morgan Chase & Co.*, 2015 WL 1283681, at *4 (S.D.N.Y. Mar. 20, 2015). At the same time, "[a] party 'must be afforded a meaningful opportunity to establish the facts necessary to support [its] claim.'" *Flood*, 2016 WL 3221146, at *4 (second alteration in original) (quoting *In re Agent Orange Prod. Liab. Litig.*, 517 F.3d 76, 103 (2d Cir. 2008)).

The SEC has established the relevance of the documents requested in each of the Requests at issue, and Rayat has not identified any undue burden. The documents requested in Requests 1-19 go to central issues in this case—whether Rayat had a financial motive to "pump" the price of RenovaCare and whether he profited from the increase in its price during the period of the alleged scheme. For the most part, each of the Requests is narrowly targeted at a specific transaction. As to Requests 20-22, the documents regarding SolarWindow also fall within the broad range of discovery permitted by Rule 26(b)(1) in that evidence regarding Rayat's involvement with SolarWindow and profits from transactions in SolarWindow shares would tend to support the claim that Rayat was secretly feeding StreetAuthority information about RenovaCare as well, as alleged in the Complaint. The information sought in the remaining Requests is relevant for the reasons identified by the SEC.

Rayat's argument is incorrect that the SEC should be precluded from requesting the information by using the tools provided under the Federal Rules of Civil Procedure because it could have obtained the information during its investigative phase. As an initial matter, the SEC has explained why it could not readily obtain at least certain of the information during the investigative phase; it was in the hands of persons located outside of the United States. Dkt. No. 59 at 1. More importantly, no rule of law requires the SEC to request in the investigative stage

every document that might turn out to be relevant in the litigation phase on pain that, if it does not seek the document during the investigation, it will not be able to seek it after it has filed a complaint and defendant has answered.  As a strict textual matter, Rule 26(b)(2)(C)(ii) speaks to whether "the party seeking discovery has had ample opportunity to obtain the information *by discovery in the action*."  Fed. R. Civ. P. 26(b)(2)(C)(ii) (emphasis added).  On its face, it does not address the circumstance where a party can obtain the information other than through "discovery in the action."  *See Certain Underwriters at Lloyd's London v. Garmin Int'l, Inc.*, 2012 WL 3879885, at *4 n.28 (D. Kan. Sept. 6, 2012) ("Rule 26(b)(2)(C)(ii) requires courts 'to limit the frequency or extent of discovery' when it determines that 'the party seeking discovery has had ample opportunity to obtain the information by discovery in the action.' . . . The rule . . . does not contemplate a mandatory limitation when a different action provided the ample opportunity to obtain the information.").  More generally, the SEC need only satisfy the standards applicable to other litigants in order to file a complaint.  Its claims and legal contentions must be warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law, and its factual contentions must have evidentiary support.  Fed. R. Civ. P. 11(b)(2), (3).  SEC investigations can be time-sensitive; the SEC has a mission to root out fraud and the statute of limitations clock runs.  *See generally Gabelli v. SEC*, 568 U.S. 442 (2013).  The SEC need not have accumulated all of the evidence that it will ultimately need to win the case before it brings a case.  *See SEC v. Sargent*, 229 F.3d 68, 80 (1st Cir. 2000) ("[T]here is no authority which suggests that it is appropriate to limit the SEC's right to take discovery based upon the extent of its previous investigation into the facts underlying its case." (quoting *SEC v. Saul,* 133 F.R.D. 115, 118 (N.D. Ill.1990))); *see also SEC v. Biogenic, Inc.*, 2022 WL 1228782, at *1 (E.D. Mich. Apr. 26, 2022) ("[A]s several other

courts have explained, 'discovery should not be foreclosed to the SEC merely because of its pre-filing investigation.'" (alterations adopted) (quoting *Sargent*, 229 F.3d at 80)); *SEC v. Espuelas*, 699 F. Supp. 2d 655, 659 (S.D.N.Y. 2010) (same).

Those principles are applicable here.  The SEC has explained why it did not seek the information earlier, and it has explained the relevance of the requested information.  Rayat has not identified any undue burden.

The motion at Dkt. No. 55 is DENIED.[2]  The Clerk of Court is respectfully directed to close Dkt. No. 55.

SO ORDERED.

Dated: May 5, 2022
      New York, New York

                                        LEWIS J. LIMAN
                                    United States District Judge

---

[2] The Court notes that Rayat has not objected to the production of the tax returns on the grounds of confidentiality of tax return information or made any objection to the production of the cellphones other than the objections he makes with respect to the other Requests.  Accordingly, the Court does not address any more general issues regarding the production of return information or cellphones.