**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,** | |
| Plaintiff, | |
| **v.** | No. 1:21-cv-04777-LJL |
| **HARMEL S. RAYAT, and RENOVACARE, INC.,** | |
| Defendants. | |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION**
**FOR LEAVE TO FILE AN AMENDED COMPLAINT AND JOIN PARTIES**

## <u>TABLE OF CONTENTS</u>

I.      PRELIMINARY STATEMENT ................................................................1

II.     PROCEDURAL BACKGROUND.......................................................................3

        A.      The Commission's Preceding Investigation Had Inherent Limitations..................3

                1.      Rayat Provided Limited, Misleading Information. ......................................3

                        a.      Rayat Failed to Produce Any Skype or WhatsApp Messages .........4

                        b.      Rayat Misled the Commission About His Financial Interest in
                                RenovaCare Shares Owned by Bhogal and Sidhu..........................4

                        c.      Rayat Testified That He Had Minimal Involvement in the
                                StreetAuthority Campaign ..............................................5

                2.      Bhogal Provided Limited, Misleading Information....................................6
                -
                3.      Fleming Provided Limited, Misleading Information ..................................6

                4.      Sidhu Provided No Information....................................................7

        B.      The Complaint. ...................................................................7

        C.      The Court's Case Management Order ................................................7

        D.      The Commission Has Diligently Pursued Discovery .............................8

        E.      Discovery In This Action Revealed Critical New Evidence ...................8

                1.      Discovery Revealed New Evidence That Rayat Had a Financial
                        Interest in Shares Sold by Bhogal and Sidhu................................8

                2.      Discovery Revealed New Evidence That Rayat and the Proposed
                        Defendants Coordinated Their Trading and Promotional Activity...........10

                3.      Discovery Revealed New Evidence that Rayat and the Proposed
                        Defendants Coordinated Activity with the StreetAuthority Promotion.....11

                4.      New Evidence Provided the Necessary Context to Reveal the
                        Proposed Defendants' Coordinated and Manipulative Trading................13

        F.      The Commission Moved Promptly To Bring This Motion ...................13

G.      The Commission's Proposed Amended Complaint ................................................14

III.    ARGUMENT ...........................................................................................................15

A.      This Court Grant Leave To Amend And Join Parties. ............................................15

B.      This Court Should Grant Leave To File The Propose Amended Complaint .........16

1.      "Good Cause" Exists Because the Commission Recently Received
New Critical Evidence and Acted Diligently .............................................16

2.      Granting the Commission's Motion is in the Interests Of Justice
And Of Judicial Economy, and Would Not Unduly Prejudice
Defendants .................................................................................................19

CONCLUSION ..............................................................................................................22

## <u>TABLE OF AUTHORITIES</u>

**CASES**

*A.V.E.L.A., Inc. v. Estate of Monroe,*
    34 F. Supp. 3d 311 (S.D.N.Y. 2014).................................................................................21

*Block v. First Blood Assocs.,*
    988 F.2d 344, 350 (2d Cir. 1993)........................................................................................15

*Bridgeport Music, Inc. v. Universal Music Grp., Inc.,*
    248 F.R.D. 408 (S.D.N.Y. 2008) .........................................................................................16

*Cheng v. Via Quadronno LLC,*
    No. 20-cv-8909-LJL, 2022 WL 1210839 (S.D.N.Y. Apr. 25, 2022) .........................15, 16

*Decastro v. City of New York,*
    No. 16-CV-3850 (RA), 2020 WL 4932778 (S.D.N.Y. May 4, 2021) ...............................16

*Lorley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC,*
    797 F.3d 160 (2d Cir. 2015)................................................................................................15

*Port Auth. Police Benevolent Ass'n v. Port Auth.,*
     No. 15-cv-3526, 2016 WL 6083956 (S.D.N.Y. Oct. 17, 2016)............................16, 19, 21

*Scott v. Chipotle Mexican Grill, Inc.,*
    300 F.R.D. 193 (S.D.N.Y. 2014) .........................................................................................16

*SEC v. DCI Telecomm., Inc.*
    207 F.R.D. 32 (S.D.N.Y. 2002) ...........................................................................................21

*SEC v. Fiore,*
    416 F. Supp. 3d 306 (S.D.N.Y. 2019)..................................................................................22

*Sherman v. Fivesky, LLC,*
     No. 19-cv-8015-LJL, 2020 WL 5105164 (S.D.N.Y. Aug. 31, 2020).................15, 16, 21

*Soroof Trading Dev. Co. Ltd. v. GE Microgen, Inc.,*
    283 F.R.D. 142 (S.D.N.Y. 2012) .........................................................................................19

*United States v. Continental Illinois Nat'l Bank & Trust Co.*,
    889 F.2d 1248 (2d Cir. 1989)............................................................................21

**RULES**

Fed. R. Civ. Pr. 15(a) ...............................................................................................15

Fed. R. Civ. Pr. 16(b) ..............................................................................................17

Fed. R. Civ. Pr. 20....................................................................................................16

Fed. R. Civ. Pr. 21….................................................................................................16

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION
FOR LEAVE TO FILE AN AMENDED COMPLAINT AND JOIN PARTIES**

Pursuant to Rules 15(a), 16(b), and 21 of the Federal Rules of Civil Procedure ("Rules"), Plaintiff Securities and Exchange Commission ("Commission" or "SEC") respectfully submits this memorandum in support of its motion for leave to file an amended complaint and join additional parties ("Motion"). The Commission's proposed amended complaint is attached as Exhibit A. Defendants have stated that they oppose this Motion.

## I.   PRELIMINARY STATEMENT

Recently, discovery in this action revealed crucial new evidence supporting the new claims asserted in the proposed amended complaint against Defendants and the proposed new defendants and relief defendants. The Commission could not previously obtain this evidence because Defendant Harmel S. Rayat ("Rayat") and others: (i) deleted certain evidence; and (ii) were not forthcoming in testimony during the Commission's preceding investigation. In discovery, the Commission obtained new communications from third parties – many of which directly involved Rayat, but that he never produced – that provide new context to the alleged scheme. Discovery also revealed that Rayat and the proposed new defendants provided incomplete and misleading testimony concerning key details about the alleged scheme. Most notably, in testimony, Rayat distanced himself from several transactions where he sold Defendant RenovaCare Inc. ("RenovaCare") common stock to the proposed defendants. He testified he gave these shares as "gifts" to his friends; however, when the Commission had its first opportunity in March 2022 to test Rayat's assertions by deposing one such friend, proposed defendant Jeetenderjit Singh Sidhu, Sidhu testified, "[Rayat] ***didn't gift me stock***. He sold me stock for the benefit of my children." Ex. B, Excerpt of Sidhu Dep. Tr., at 40 (emphasis added). Sidhu then explained how Rayat could profit, and, in fact, has profited from Sidhu's stock sales.

1

Once revealed, the Commission immediately sought additional discovery from Rayat and other third parties.  Rayat, however, moved for a protective order, but this Court denied his motion, holding that evidence concerning Rayat's financial interests in his associates' trading "go to central issues in this case," and the "SEC has explained why it could not readily obtain at least certain of the information during the investigative phase."  (Order, Dkt. No. 65, at 5).

Rayat and others substantially completed production of this new discovery by June 15, 2022.  Put together, the new discovery revealed several critical facts:  (1) Rayat closely controlled the timing and extent of RenovaCare-related promotional activity; (2) Sidhu and the other proposed new defendants bought and sold RenovaCare stock in harmony with Rayat's promotional activity and each other; and (3) all the while, Rayat maintained financial interests in the profits of the proposed defendants' trading.  This evidence therefore unmasked a much broader scheme than that alleged in the Complaint.

With this new evidence in hand, Commission staff worked diligently to obtain the necessary authorization to bring this Motion.  These extraordinary circumstances constitute good cause to grant the Commission's Motion.  The Commission does not make this request lightly, but these circumstances justify such relief and the timing of this request.  It is also in the interests of judicial economy to permit the Commission to file the proposed amended complaint in this action rather than require the Commission to file a new related case, as the amended complaint concerns the same alleged scheme currently before the Court.  Finally, Defendants will not be unduly prejudiced, both because it is in their interest to have these related claims litigated as one case, and that Rayat's and the proposed new defendants' conduct is responsible for the delay.

Accordingly, the Commission respectfully requests that this Court grant leave to permit the filing of an amended complaint that adds:  (1) three of Rayat's close associates as defendants:

2

Sidhu, Jatinder Bhogal, and Sharon Fleming ("Proposed Defendants"), for violating the Federal securities laws for engaging in a scheme with Defendants Rayat and RenovaCare to defraud investors in RenovaCare stock; (2) four entities owned by Sidhu or Bhogal as relief defendants that transacted in RenovaCare stock in furtherance of the scheme:  1420527 Alberta Ltd. ("Alberta Ltd."), Blackbriar Asset Management Ltd. ("Blackbriar"), Treadstone Financial Group Ltd. ("Treadstone Ltd."), and Treadstone Financial Group LLC ("Treadstone LLC") (collectively, "Proposed Relief Defendants"); (3) new but related claims against Defendants, and (4) seeks disgorgement of ill-gotten gains.

## II.    PROCEDURAL BACKGROUND

### A.    The Commission's Preceding Investigation Had Inherent Limitations

The initial Complaint stems from a Commission investigation that yielded substantial evidence that Rayat and RenovaCare funded and orchestrated a fraudulent promotion of RenovaCare through a third-party financial publisher called StreetAuthority LLC ("StreetAuthority"), and then lied about it in a public press release.  (Compl., Dkt. No. 1.)  The investigation stemmed from an inquiry by OTC Markets Group Inc. regarding promotional activity in late 2017 and early 2018, and therefore focused on this time period.  But there were several reasons beyond the Commission's control preventing it from uncovering critical facts.

#### 1.    Rayat Provided Limited, Misleading Information

In its investigation, the Commission subpoenaed Rayat for testimony and documents.  It is now clear, however, that there were critical gaps in his document production, and that his testimony was, at best, incomplete and misleading.

### a.      Rayat Failed to Produce Any Skype or WhatsApp Messages

Rayat produced emails and other documents in the investigation, but he did not produce any electronic messages from platforms such as Skype and WhatsApp.  In testimony before the Commission, he testified that he deleted electronic messages "until I was told not to," and claimed he reviewed his Skype messages and found "nothing responsive" to the Commission's subpoena.  Excerpt of Rayat SEC Test. Tr., Ex. C, at 17-18.  In contrast, however, discovery in this action revealed that Rayat engaged in key communications with StreetAuthority over Skype and WhatsApp.  It also revealed that he affirmatively took steps to delete WhatsApp messages on May 1, 2018, which was shortly *after* Rayat knew the Commission had commenced an investigation and subpoenaed RenovaCare.  *See* Ex. D, SEC-BERMEAF-E-0008975, at SEC-BERMEAF-E-0008979 (evidencing that, on May 1, 2018, Rayat, who had the phone number with a 604 area code, "left" a WhatsApp chat with several StreetAuthority representatives).  Crucially, in the investigation, Rayat produced *no* messages from this exchange, but as explained below, the Commission later obtained the messages from another third party.

### b.      Rayat Misled the Commission About His Financial Interest in RenovaCare Shares Owned by Bhogal and Sidhu

The investigation revealed that Rayat did not sell RenovaCare shares during the StreetAuthority promotion (although he tried to on several occasions, *see* Compl. ¶ 77), but several individuals with ties to Rayat did sell shares, including Rayat's long-time business associates, Bhogal and Sidhu.

In testimony, Commission staff questioned Rayat about his RenovaCare transactions involving Bhogal and Sidhu.  He testified,

> *my goal was to, really, gift them shares* at that time . . . . Mr.
> Sidhu and Mr. Bhogal had been – you know, I had been working
> with them for a while, and I said, hey, you know what, I'm selling
> my shares and here's – here's something, thank you for – for

4

> being, you know, good employees.  If something comes of these
> shares, great; if nothing, you know, it's my gift to you. But in
> doing so, that would have been a taxable event for me.

Ex. C, at 150-51 (emphasis added).  When pressed, Rayat further denied that he maintained any

financial interest in Bhogal's or Sidhu's share sales, and repeatedly testified that the transactions

were done solely for tax purposes.  *Id.* at 153-55.  When Commission staff asked him if he ever

"disposed of any portion of the preferred shares," Rayat testified, "No. It was just – it's to make

it tax-friendly."  *Id* at 154*.*  When asked if the preferred shares had value, he testified "I don't

know.  It was never my intent to get value from my preferred shares.  It was my intent to do a

tax-friendly transaction to achieve my goal."  *Id.* at 155.

Rayat also failed to disclose that he had arranged and financed additional RenovaCare

stock purchases by Sidhu and Bhogal, through entities named Collingwood Holdings LLC

("Collingwood"), and Wolverhampton Holdings LLC ("Wolverhampton"), respectively.  He

claimed he "had no involvement" in these entities, and only recalled their names because he had

seen their names in RenovaCare's Commission filings.  *Id.* at Tr. 45-46; 112.  Rayat further

testified he did not recall if these entities owned RenovaCare stock, and never received anything

of value from them.  *Id.* at 107-108; 111-15.

### c.   Rayat Testified That He Had Minimal Involvement in the StreetAuthority Campaign

Rayat also denied any significant role in the StreetAuthority promotional campaign.  He

testified that neither he nor RenovaCare were "involved in the creation or distribution" of

RenovaCare promotional materials.  *Id.* at 236-37.  Similarly, in his "Wells" submission to the

5

Commission,[1] Rayat claimed he had "limited involvement" in the StreetAuthority promotion and "[c]learly, Mr. Rayat was not controlling the StreetAuthority's" promotion.  Ex. E, at 2, 5.

### 2.    Bhogal Provided Limited, Misleading Information

During the investigation, Bhogal produced documents to the Commission, but, like Rayat, he did not produce any electronic messages from platforms such as Skype and WhatsApp. In testimony, he acknowledged he "absolutely" used Skype and claimed he had searched for responsive documents, but he produced no such messages to the Commission.  Ex. F, Excerpt of Bhogal SEC Test. Tr., at 30-32.  Bhogal further admitted he sold RenovaCare shares, but denied that he engaged in any fraudulent conduct, claiming he was just selling "to make money . . . It was just that you know if I have an opportunity to sell some shares that I would want to do that." *Id.* at 289-290; *see also id.* at 124; 294-95.  Bhogal did not disclose that Rayat still maintained a financial interest in entities through which Bhogal owned RenovaCare shares.  *See id.* at 273-75. Bhogal also minimized his involvement in promoting RenovaCare, and denied any substantial involvement or knowledge of the StreetAuthority promotion.  *Id.* at 162-67.

### 3.    Fleming Provided Limited, Misleading Information

During the investigation, another long-time friend of Rayat's, Sharon Fleming (formerly Sharon Hebgin, produced some documents and provided testimony, but she did not include any Skype and WhatsApp communications.  In testimony, Fleming denied any substantial role in the promoting RenovaCare, claiming she "wasn't involved myself personally" except for limited involvement with StreetAuthority that was a "personal favor" to Rayat, and she denied any coordinated trading or other involvement in the alleged scheme.  *See* Ex. G, Excerpt of Sharon

---

[1] *See* SEC Enforcement Manual2.4, *available at* https://www.sec.gov/divisions/enforce/enforcementmanual.pdf

Hebgin SEC Test. Tr., at 59-61; 188-89.  Fleming also did not disclose that longstanding

business relationships with Rayat, Bhogal, and Sidhu, or that Rayat had loaned her $500,000.  *Id.*

### 4.    Sidhu Provided No Information

Sidhu is a Canadian citizen, and he did not respond to numerous attempts by Commission

staff to secure his cooperation during the investigation.  The Commission received some emails

involving Sidhu from others, but no communications over Skype or WhatsApp.

As explained in more detail below, the Commission later obtained electronic

communications from third parties, including communications involving Rayat, Bhogal, and

Fleming, that in turn led to other evidence and helped the Commission to unravel the full extent

of the scheme as described in the proposed amended complaint.

### B.    The Complaint

On May 28, 2021, the Commission filed the initial Complaint, alleging that Defendants

Rayat and RenovaCare defrauded investors by orchestrating and funding, and then concealing, a

promotional campaign by StreetAuthority that contained false statements about RenovaCare.

(Dkt. No. 1, ¶ 1.)  Among other things, the Complaint alleges that RenovaCare and Rayat issued

a press release on January 8, 2018 ("January 8 Press Release") that denied ***any*** involvement in

the StreetAuthority promotion when, in fact, they were intimately involved in it from the outset.

*Id.*  The SEC further alleges that Rayat designed the campaign to increase RenovaCare's stock

price and volume while attempting to sell his shares, and that his close associates sold millions of

dollars of shares during the promotional campaign.  (*Id.* ¶¶ 1, 78-80.)

### C.    The Court's Case Management Order

On August 12, 2021, this Court issued a Case Management Plan and Scheduling Order

that, among other things, permitted the Commission until September 13, 2021, to amend its

Complaint or join additional parties.  (Dkt. No. 17, ¶ 4.)  This Court has amended this order three times, primarily due to Defendants' decision to substitute counsel and other complications in conducting discovery relating largely to the on-going COVID-19 pandemic.  (*See* Dkt. Nos. 43; 54; 59.)  The Court extended the discovery deadlines, but did not extend the deadline to amend the Complaint or join parties.  *Id.*  Discovery closes October 30, 2022.  (Dkt. No. 59, ¶ 9.)  The deadline to amend or join parties passed before the Commission received any new discovery.

### D.      The Commission Has Diligently Pursued Discovery

In litigation, the Commission has diligently pursued discovery, and has obtained substantial new evidence.  Among other things, it issued seven Rule 45 subpoenas for documents, obtained voluntarily productions documents from several other third parties, and obtained this Court's approval to send a Letter of Request to Canada that led to additional evidence from Sidhu and other entities.  (*See* Dkt. No. 32.)  The Commission also sought testimony from Thomas Bold, RenovaCare's former CEO, a German citizen.  After months of negotiations with Bold's counsel and the Commission obtaining a Letter of Request to Germany (Dkt. No. 84), Bold has agreed to appear for a deposition in the United States in the near future. In all, the Commission has received over 22,000 new documents since this litigation commenced, including over 18,000 documents after Sidhu's deposition in March 2022.

### E.      Discovery In This Action Revealed Critical New Evidence

In discovery, the Commission has obtained new evidence that the scheme was more complex and longstanding than previously alleged.

#### 1.      Discovery Revealed New Evidence That Rayat Had A Financial Interest In Shares Sold by Bhogal and Sidhu

*First*, new evidence revealed that Rayat's transfers of RenovaCare stock to Bhogal and Sidhu were not "gifts," as Rayat testified under oath.  On March 18, 2022, the Commission

8

deposed Sidhu for the first time and asked, "Did Mr. Rayat ever gift to you stock in any way?" Sidhu testified, "***He didn't gift me stock.***  He sold me stock for the benefit of my children."  *See* Ex. B, at 40.  Sidhu then explained that Rayat sold the stock around 2008 in exchange for redeemable preferred shares in proposed relief defendants Blackbriar and Treadstone Ltd., that Rayat redeemed some of those shares in 2011 for cash, and that Rayat still owned preferred shares in Sidhu's entities worth millions of dollars.  *Id. at* 44-55.  Sidhu also testified that Rayat orchestrated and financed Collingwood's purchase of RenovaCare shares with a $1.2 million loan that remained partially outstanding.  *Id.* at 56-58.

Once this new evidence was revealed, the Commission immediately sought additional discovery from Rayat and third parties to confirm these facts and determine whether Rayat had similar deals with others.  Rayat however, sought to block this discovery by moving this Court for a protective order, arguing that any suggestion that Rayat profited from the alleged scheme was "absurd on its face," had been "debunked repeatedly," and the Commission "elected not to request documents about" the relevant transactions during the investigation.  Dkt. No. 55, at 2. The Court disagreed, holding that the requested documents "go to central issues in this case," and that the "SEC has explained why it could not readily obtain at least certain of the information during the investigative phase."  Order, Dkt. No. 65, at 5.

On June 15, 2022, Rayat substantially completed his document production concerning these transactions.  That evidence, along with other new discovery, revealed that Rayat orchestrated numerous transactions dating back to 2007 that enabled him to maintain substantial financial interests in RenovaCare shares Sidhu and Bhogal owned, including shares sold by both of them while RenovaCare's StreetAuthority promotional campaign was ongoing.  *See, e.g.,* Ex. H, RCHR-SEC-000011919 (March 2011 redemption of preferred shares in Blackbriar (f/k/a

Fargo West Investments Ltd.)); Ex. I, RCHR-SEC-000014823 (June 2013 email in which Rayat forwards his loan agreements with Collingwood and Wolverhampton to the broker-dealer these entities held accounts to sell their RenovaCare shares). It further revealed that Rayat loaned Fleming $500,000 in 2013. *See* Ex. J, FLEMING-00003206 (April 1, 2014 email from Rayat to Fleming attaching promissory note).

### 2.   Discovery Revealed New Evidence That Rayat And The Proposed Defendants Coordinated Their Trading And Promotional Activity

*Second*, new discovery revealed that Rayat and the Proposed Defendants coordinated their trading and promotional activity since at least 2012. Among other things, new documents reveal that, since at least 2012, Rayat and the Proposed Defendants coordinated the opening of brokerage accounts and sales of RenovaCare and SolarWindow Technologies, Inc. ("Company A" in the Complaint). *See, e.g.,* Ex. K, FLEMING-00000314 (May 23, 2012 Fleming email to Rayat and others concerning the deposit of RenovaCare – then called Janus Resources – shares at a broker-dealer in which Rayat had an account); Ex. L, SEC-JHD-E-00033832 (June 20, 2013 Sidhu email to the same broker-dealer about his and Bhogal's deposit of RenovaCare shares).

New evidence also revealed that, long before the StreetAuthority promotion in 2017, Defendants and Proposed Defendants orchestrated other third-party promotions of RenovaCare and sold shares. *See* Ex. M, FLEMING-00005515 (May 10, 2015 email to Fleming and Rayat concerning an up-coming third-party RenovaCare promotion); Ex. N, SEC-COR-E-0035579 (Excerpt of trade blotter evidencing Alberta Ltd., Collingwood, and Fleming sales of SolarWindow— then called New Energy Technologies – stock between October 2013 and January 2014, and Wolverhampton, Collingwood, and Fleming sales of RenovaCare stock between November and December 2015). This new evidence revealed that the StreetAuthority promotion was just the latest iteration of their scheme to profit from stock promotions.

### 3.   Discovery Revealed New Evidence that Rayat and The Proposed Defendants Coordinated Activity with the StreetAuthority Promotion

*Third*, in discovery, the Commission obtained new communications involving Rayat that he did not produce, and that shed new light on the scheme alleged in the Complaint.  It revealed that Rayat's involvement with StreetAuthority was closely coordinated with the Proposed Defendants, including that (1) Rayat worked with Bhogal and others to issue RenovaCare press releases to complement the StreetAuthority promotion, and (2) Bhogal, Sidhu, and Fleming coordinated their trading with this promotional activity.

The scope of this scheme was most vividly revealed in a February 12, 2018 email to Rayat from the individual identified as the "StreetAuthority Owner" in the Complaint (Dkt. No. 1 ¶ 13), that the Commission received from another third party for the first time in March 2022, despite the fact it was responsive to investigative subpoenas that the Commission issued to Rayat, the StreetAuthority Owner, and StreetAuthority.  On February 12, 2018, the StreetAuthority Owner emailed Rayat regarding a recent news article by another financial publisher that suggested that RenovaCare was part of a pump-and-dump scheme.  He stated,

> What can we do?
>
> I recommend, if [RenovaCare] will issue any PR release, that you should not address this article at all.  The release should be about a positive story about Renova[C]are.  ***If you have news on the FDA or your submission to the FDA address that*** . . . .
>
> My sense is that I do not think this negative story has received a great deal of press/readership.  The stock is up .54% and trading volume is pretty decent at mid-day.
>
> Regarding additional marketing exposure, I spoke with [another StreetAuthority representative] ***to crank up the spend***. . . .
>
> ***I think it is important to keep a steady spend to keep [the] volume up and the stock price up.***

Ex. O, SEC-KERNT-E-0000031 (emphasis added).  As StreetAuthority suggested, three days

11

later, RenovaCare issued a press release concerning "a successful FDA meeting"[2] – even though RenovaCare did not disclose in the press release that this meeting occurred *a year before*.

In discovery, the Commission also obtained WhatsApp messages between Rayat and StreetAuthority revealing that Rayat provided instructions as to the content and timing of the promotion.  For example, on February 21, 2018, Rayat sent StreetAuthority a link to another RenovaCare press release that Rayat described as "fresh off the presses and still warm."  Ex. D, at SEC-BERMEAF-E-0008978.  The StreetAuthority Owner replied, "Just read the story . . . . Need to figure out how to leverage this news on other media."  *Id.*  This press release, like the February 12, 2018 press release, concerned stale news that RenovaCare had won a patent litigation that was decided *three months earlier*.[3]

These and numerous other newly obtained documents shed new light on both Defendants' and the Proposed Defendants' conduct.[4]  It showed that Rayat was not only

---

[2] "RenovaCare Announces Successful FDA Meeting," *available at* https://www.renovacareinc.com/2018/02/renovacare-announces-successful-fda-meeting

[3] "RenovaCare Secures Patent Victory and Continues to Bolster IP Portfolio," *available at* https://www.renovacareinc.com/2018/02/renovacare-secures-patent-victory-continues-bolster-ip-portfolio

[4] Other salient examples of key new evidence includes Skype messages between Rayat and another StreetAuthority representative where Rayat repeatedly directed StreetAuthority to increase its promotion in mid-February 2018.  *See* Ex. P, SEC-KERNT-E-0000039 (Rayat states, "were you able to turn on [StreetAuthority's RenovaCare promotion] on Facebook? . . . It's kinda important that it gets turned on sooner rather than later.); Ex. Q, SEC-KERNT-E-0000038 (Rayat to the same StreetAuthority representative, "great speaking earlier today . . . were you able to 'turn up the dial?'").  The Commission also obtained new internal StreetAuthority emails evidencing the extent to which Defendants controlled StreetAuthority's promotional activities. *See* Ex. R, SEC-BERMEAF-C-E-0002222, at SEC-BERMEAF-C-E-0002224 (in an internal StreetAuthority email, the StreetAuthority Owner states, "It is very important that we spend the budget equally -- $50,000/month for each [RenovaCare] and $50,000/month for [SolarWindow]. *I think this is important to ensure that [RenovaCare] does not withdraw from the marketing program*.) (emphasis added); Ex. S, SEC-BERMEAF-C-E-0002402 (the StreetAuthority Owner emailed, "Harmel initially called me about advertising and promoting his companies.").

12

involved, but closely controlled the timing and extent of the StreetAuthority promotion.  His involvement included the February 2018 timeframe and showed that he utilized RenovaCare's internal investor relations efforts to complement the scheme. These facts are important because Bhogal was a key part of RenovaCare's internal investor relations efforts, and, at the same time, he was trading in RenovaCare stock, which further evidenced a broader scheme.

### 4. New Evidence Provided the Necessary Context to Reveal the Proposed Defendants' Coordinated and Manipulative Trading

*Fourth*, the new evidence described above demonstrated the increased promotional activity in February 2018 and provided critical context to the Proposed Defendants' trading in RenovaCare shares.  Specifically, at the exact same time Rayat, Bhogal, and RenovaCare increased their promotional activity in February 2018, the Proposed Defendants shifted their trading strategies from selling RenovaCare shares to suddenly ***buying*** shares in unison.  Taken together, this evidence revealed that the Proposed Defendants were not simply trading in RenovaCare stock innocently "to make money," as Bhogal testified, Ex. F, at 289**.**  Instead, they were coordinating their trading with each other and with the promotional activity in furtherance of a broader scheme to defraud the market for RenovaCare stock.

### F. The Commission Moved Promptly To Bring This Motion

After obtaining this new discovery, the Commission moved rapidly to consider new charges.  It disclosed that intention this Court on May 24, 2022, (Dkt. No. 78), and engaged in an expedited deliberations.  Among other things, Commission staff obtained expedited review of its recommendation to bring new charges reserved only for extraordinary cases.

Now authorized, the Commission moves for leave to amend its Complaint and join parties.  Alternatively, if this Court denies this Motion, the Commission has authorized the filing of a new related case against the Proposed Defendants and Proposed Relief Defendants.

### G.      The Commission's Proposed Amended Complaint

The Commission respectfully submits its proposed amended complaint as Exhibit A.  It

seeks to add Bhogal, Sidhu, and Fleming as defendants, add as relief defendants entities through

which Bhogal and Sidhu conducted RenovaCare trading, and add new claims against

Defendants.  The new claims build upon the allegations in the Complaint and include allegations:

- The fraudulent scheme dates back to 2007, when Rayat began selling
  RenovaCare shares to Bhogal and Sidhu for debt and equity interests that
  enabled them to jointly share in the later share sales.  Ex. A. ¶¶ 45-48.

- Rayat and the Proposed Defendants closely coordinated brokerage accounts to
  sell stock leading up to the StreetAuthority promotion.  *Id*. ¶¶ 52-67.

- Rayat and Bhogal coordinated RenovaCare's press releases and website to
  complement third-party promotions since at least 2013.  *Id*. ¶¶ 69-79.

- Rayat, Fleming, and RenovaCare orchestrated third-party promotions of
  RenovaCare since at least October 2015, and Bhogal, Sidhu, and Fleming sold
  RenovaCare shares in unison during these promotions.   *Id*.

- In February 2018, Rayat and Bhogal took steps with StreetAuthority and
  RenovaCare to enhance its promotional activity in response to negative news.
  At the same time, Proposed Defendants conducted manipulative trading in
  RenovaCare stock to complement the promotional activity.  *Id*.  ¶¶ 175-90.

- Rayat and the Proposed Defendants unlawfully "scalped" RenovaCare shares,
  selling over $7 million in stock while knowing StreetAuthority was promoting
  RenovaCare, and without disclosing their intent to sell.  *Id*. ¶¶ 106-136;

Based on this conduct, the proposed amended complaint:  (1) alleges that Bhogal, Sidhu,

and Fleming violated the anti-fraud provisions of the Federal securities laws; (2) adds claims

against Rayat and RenovaCare for violating additional anti-fraud provisions of the Federal

securities laws; (3) adds claims for disgorgement of ill-gotten gains from Rayat, the Proposed

Defendants, and the Proposed Relief Defendants; and (4) seeks injunctive relief against Bhogal,

Sidhu, and Fleming similar to that sought against Rayat.  *Id.*

III.   <u>ARGUMENT</u>

A.   **The Court Should Grant Leave To Amend And Join Parties**

Rule 15(a) provides that "[t]he court should freely give leave [to amend] when justice so requires."  "The rule in this Circuit has been to allow a party to amend its pleadings in the absence of a showing by the nonmovant of prejudice or bad faith." *Sherman v. Fivesky, LLC*, No. 19-cv-8015-LJL, 2020 WL 5105164, at *3 (S.D.N.Y. Aug. 31, 2020) (quoting *Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993).  "The 'permissive standard' of Rule 15 'is consistent with [the Second Circuit's] strong preference for resolving disputes on the merits.'" *Id.* (quoting *Lorley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190 (2d Cir. 2015)).  Similarly, Rule 21 permits the court to add a party "on just terms."  *See Cheng v. Via Quadronno LLC*, No. 20-cv-8909-LJL, 2022 WL 1210839, at *3-*4 (S.D.N.Y. Apr. 25, 2022).

But when, as here, the Court's deadline to amend the pleadings and join parties has passed, Rule 16(b)'s "good cause" standard applies.  *Id.*  "To show good cause, a movant must demonstrate diligence before filing her motion, such that despite the movant's effort, the deadline to amend the pleadings could not have been reasonably met."  *Sherman*, 2020 WL 5105164, at *3 (quoting *Scott v. Chipotle Mexican Grill, Inc.*, 300 F.R.D. 193, 197 (S.D.N.Y. 2014)).  This includes assessing whether the proposed amendment is based on information the party knew or should have known before the court's deadline.  *Id.*  Furthermore, this court may consider if amendment "would be futile, unduly prejudicial, or otherwise improper."  *Cheng*, 2022 WL 1210839, at *3 (quoting *Decastro v. City of New York*, No. 16-cv-3850, 2020 WL 4932778, at *7 (S.D.N.Y. May 4, 2021)).  And in determining whether it is proper to add new defendants, this Court considers whether claims for relief "aris[e] out of the same . . . series of transactions or occurrences," and have common questions of law or fact.  *See* Rule 20(a)(2).

"Courts have consistently recognized that if a party learns new facts through discovery that were unavailable prior to the applicable deadline and moves promptly to name new parties based on such facts, leave to amend is appropriate." *Port Auth. Police Benevolent Ass'n v. Port Auth.*, No. 15-cv-3526, 2016 WL 6083956, at *5 (S.D.N.Y. Oct. 17, 2016) (citing, *inter alia*, *Bridgeport Music, Inc. v. Universal Music Grp., Inc.*, 248 F.R.D. 408, 413-14 (S.D.N.Y. 2008)).

**B.     This Court Should Grant Leave To File The Proposed Amended Complaint**

**1.     "Good Cause" Exists Because the Commission Recently Received New Critical Evidence and Acted Diligently**

The Commission has acted diligently in prosecuting this case since the outset of its investigation.  It was previously unable to bring the new claims alleged in its proposed amended complaint due to Rayat's and the Proposed Defendants' incomplete document productions and misleading testimony in the Commission's investigation.

Discovery has unearthed relevant communications over Skype and WhatsApp that Rayat and others failed to produce.  Despite receiving subpoenas in the investigation, Rayat, Bhogal, and Fleming produced ***not one*** substantive message over these platforms, despite regularly using them.  *See* Section II.A.  Rayat, for one, admitted he deleted them.  *See* Section II.A.1.a. Tellingly, other new evidence revealed showed that Rayat took steps to delete key WhatsApp communications ***after*** he was aware the Commission had begun its investigation.  *Id*.

Rayat and the Proposed Defendants also gave misleading and incomplete testimony. Most notably, Rayat testified that he gave RenovaCare shares to Sidhu and Bhogal as "gifts," but when the Commission had its first opportunity to test these assertions during Sidhu's deposition in March 2022, Sidhu flatly contradicted Rayat's testimony.  *See* Section II.E.1.  Sidhu revealed that Rayat had not gifted Sidhu the shares, but that Rayat had profited from them and still owned

substantial financial interests in Sidhu's stock trading. *Id.* Subsequent discovery confirmed these facts, and revealed that Bhogal and Fleming also had financial obligations to Rayat. *Id.*

Further, Rayat, Bhogal, and Fleming gave misleading testimony that falsely minimized their involvement in RenovaCare's promotional activity. *See* Section II.A.1-4. For example, Rayat claimed he had "limited involvement" in, and did not "control[]," StreetAuthority's activity, but previously unproduced messages contradicted his testimony, revealing frequent direction and oversight of the StreetAuthority promotion. *See* Section II.E.3.

There is a direct line between these evidentiary limitations caused by the Defendants and Proposed Defendants and the Commission's inability to previously obtain evidence sufficient to bring the new claims in the proposed amended complaint. First, this new evidence revealed that Rayat and Bhogal closely controlled RenovaCare's promotional activity, and that it occurred in harmony with the Proposed Defendants' RenovaCare stock transactions. For example, in February 2018, while Rayat worked to "crank up the spend" on the StreetAuthority promotion, the Proposed Defendants altered their trading strategy from selling stock to aggressive buying, all in response to negative news articles about RenovaCare. *See* Section II.E.3-4. Second, new evidence revealed that Rayat had substantial financial interests in the Proposed Defendants' RenovaCare share sales. *See* Section II.E.1.

Put together, this evidence made clear that the Proposed Defendants' conduct was not mere coincidence – or as an innocent way "to make money," as Bhogal testified. Ex. F, at 289-290. Rather, it revealed a complex, highly coordinated scheme to falsely promote RenovaCare, while coordinating trading and other conduct intended to defraud the market for RenovaCare stock – and all of which enabled them to reap over $7 million in stock sales. *See* Section II.G.

This new evidence was critical to bringing the new claims in the proposed amended complaint, particularly given that Rayat and the Proposed Defendants deleted or otherwise failed to produce any direct communications outside of certain emails.  Indeed, as this Court held, evidence concerning Rayat's financial interests in the Proposed Defendants' trading "go to central issues in this case," and that the "SEC has explained why it could not readily obtain at least certain of the information during the investigative phase."  (Order, Dkt. No. 65, at 5.)

Immediately upon obtaining these new evidence, the Commission moved quickly to conduct new discovery to confirm these facts.  It was delayed, however, as Rayat sought a protective order barring the discovery, which this Court denied on May 5, 2022.  *See* Section II.E.1.  Rayat substantially completed his production on June 15, 2022.  *Id.*  From this and other new discovery, the Commission received over 18,000 documents since Sidhu's deposition in March 2022.  *See* Section II.D.   While actively litigating this case, the Commission conducted expedited deliberations and is now authorized to bring this Motion.  *See* Section II.G. [5]

In all, the proposed amended complaint alleges a complex scheme involving the coordination among numerous individuals and entities spanning three countries and conduct over a decade.  Rayat and the Proposed Defendants have deleted evidence and given misleading and incomplete accounts of key events, yet, despite these obstacles, the Commission has still moved diligently to bring the new claims.  Good cause therefore exists to grant this Motion.  *See, e.g., Port. Auth. Police Benevolent Ass'n*, 2016 WL 6083956, at *6 (granting motion to amend and join defendants six months after the deadline because plaintiffs "adduced previously unknown facts about the Putative Defendants during the final stages of discovery that could potentially

---

[5] The Commission was able to complete this discovery despite substantial obstacles relating to the COVID-19 pandemic that required, among other things, the parties to postpone three depositions.  (*See* Letter-Motion to Extend Discovery, Dkt. No. 77.)

bear on the § 1983 liability of the Port Authority or the individual Putative Defendants themselves."); *Soroof Trading Dev. Co. Ltd. v. GE Microgen, Inc.*, 283 F.R.D. 142, 149 (S.D.N.Y. 2012) (granting leave to amend and join parties two month after deadline because facts learned in discovery were "more varied and detailed than those included in the original complaint," and were "necessary" to add the new defendant).

> **2.      Granting The Commission's Motion is in the Interests of Justice and of Judicial Economy and Not Unduly Prejudicial**

The remaining factors all weigh heavily in support of granting this Motion.  Permitting the Commission to amend its complaint is in the interests of justice.  The proposed new claims seek additional relief relating to the scheme already alleged in the Complaint, including claims for disgorgement.  If successful, these claims would entitle the Commission to claw back the ill-gotten gains related to the scheme, which is intended to compensate its victims.  The proposed amended complaint also seeks equitable and other relief against other alleged wrongdoers.

It is also in the interests of judicial economy to permit the Commission to seek this relief via amendment.  The proposed amended complaint is based on the same fraudulent scheme at issue in the Complaint, and that has already been subject to extensive discovery.  For example, the Complaint alleges that a "number of Rayat's close associates" profited from the alleged scheme (Dkt. No. 1, ¶ 78), and the parties already conducted extensive discovery concerning those allegations.  The proposed amended complaint now seeks to directly assert claims against a number of those close associates relating to that same trading.  And in accordance with Rule 20(a)(2)(B), the newly proposed claims involve the same questions of law and fact common to the current Defendants – *i.e.*, whether there was a fraudulent scheme concerning RenovaCare stock in violation of the Federal securities laws.

Given the extensive discovery to date, if this Court permits amendment, the Commission

expects it would not need to conduct substantial new discovery, other than engaging with the newly joined parties in written and other discovery permitted under the Rules to which it is currently not entitled.  Thus, this Court would need only to extend the discovery period – which remains on-going – to allow joined parties to participate in discovery.  Nor would trial in this action be significantly extended because the evidence of the scheme as presently alleged overlaps entirely with that in the proposed amended complaint.

On the other hand, if this Court denies leave to amend, the Commission has authorized the filing of a new case against the Proposed Defendants and Proposed Relief Defendants.  That new case would have to proceed anew, requiring a new discovery period, and a second trial involving the same operative facts as this action.  Thus, the interests of judicial economy strongly militate in favor of amendment.  *See A.V.E.L.A., Inc. v. Estate of Monroe*, 34 F. Supp. 3d 311, 319 (S.D.N.Y. 2014) (granting motion to amend one week before the close of discovery, and holding "[u]nder the proposed amendment, the exact same claims, arising from the same course of conduct, are now asserted against allegedly interrelated entities.  It is appropriate that these claims be adjudicated together.")

For similar reasons, Defendants would not be unduly prejudiced if this Court grants this Motion.  Contrary to their position on this Motion, it is in Defendants' interests to grant an amendment because, otherwise, Defendants will be required to defend this case, and then serve as critical third party witnesses in discovery and trial in a newly filed case.  *See SEC v. DCI Telecomm., Inc.* 207 F.R.D. 32, 34 (S.D.N.Y. 2002) (granting motion to amend 21 months into discovery, because, among other things, the Commission would otherwise file a separate action that would cause "inconvenience and expense to all involved.").  But if amendment is granted, this case would only be delayed for the newly joined parties to engage in discovery they deem

necessary.  And requiring Defendants to engage in new discovery is alone insufficient prejudice to deny leave to amend.  *See Sherman*, 2020 WL 5105164, at *3 ("the adverse party's burden of undertaking discovery, standing alone, does not suffice to warrant denial of a motion to amend a pleading.") (quoting *United States v. Continental Illinois Nat'l Bank & Trust Co.*, 889 F.2d 1248, 1255 (2d Cir. 1989)); *Port. Auth. Police Benevolent Ass'n*, 2016 WL 6083956, at *7 (finding no undue prejudice even if depositions are reopened or supplemental discovery served).

Furthermore, Defendants will not suffer undue prejudice given that the Commission's delay in bringing this Motion is directly linked to Rayat's and the Proposed Defendants' efforts to hamper the Commission's investigation by deleting key evidence and providing misleading and incomplete testimony.  It would therefore be inequitable to deny amendment and impose upon the Commission the burden of adjudicating two closely related cases at the same time.

Finally, amendment would not be futile.  The proposed amended complaint contains well-pleaded violations of the Federal securities laws, alleging claims that Defendants and Proposed Defendants engaged in a scheme to defraud RenovaCare investors, including making material misstatements, scalping, conducting manipulative trading, and engaging in deceptive conduct that, if proven at trial, will entitle the Commission to the requested relief.  *See, e.g., SEC v. Fiore*, 416 F. Supp. 3d 306 (S.D.N.Y. 2019) (denying motion to dismiss as to claims where "the SEC alleges a deceptive scheme involving multiple forms of market manipulation, as well as various misstatements or omissions, which, combined with a misleading promotional campaign, were designed to convince the public that there was more market interest in Plandai stock that in fact existed, encouraging the public to buy Plandai stock and then allowing Fiore to sell his shares at a profit").

Thus, all of the relevant factors weigh heavily in favor of granting this Motion.

21

## <u>CONCLUSION</u>

For the foregoing reasons, this Court should grant the Commission's motion for leave to amend its complaint and join parties.  The Commission's proposed amended complaint is attached hereto as Exhibit A.


Dated:  July 25, 2022                                    Respectfully submitted,



                                                         s/ Matthew Scarlato
                                                         Matthew Scarlato (admitted *Pro hac vice*)
                                                         John Bowers (Bar No. JB8515)
                                                         SECURITIES AND EXCHANGE
                                                          COMMISSION
                                                         100 F Street, NE
                                                         Washington, DC  20549
                                                         (202) 551-3749 (Scarlato)
                                                         (202) 551-4645 (Bowers)
                                                         scarlatom@sec.gov
                                                         bowersj@sec.gov