UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------X
                        :

SECURITIES AND EXCHANGE COMMISSION,    :

            Plaintiff,             :

                        :        21-cv-4777 (LJL)

      -v-                :

                        :       OPINION AND ORDER

HARMEL S. RAYAT, AND RENOVACARE INC.,    :

           Defendants.          :

                        :

-------------------------------------------------------------------X

LEWIS J. LIMAN, United States District Judge:

      The United States Securities and Exchange Commission ("SEC" or "Plaintiff") moves

pursuant to Rules 15(a), 16(b) and 21 of the Federal Rules of Civil Procedure to file an amended

complaint and to join new parties.  Dkt. No. 85.  Proposed additional defendants Jeetenderjit

Singh Sidhu ("Sidhu"), Jatinder Bhogal ("Bhogal"), and Sharon Fleming ("Fleming")

(collectively, "Proposed Defendants") move to intervene and oppose the amendment.  Dkt. Nos.

92, 97, 99.  The SEC does not oppose the motions of the Proposed Defendants to intervene for

the limited purpose of responding to the SEC's motion to amend, *see* Dkt. No. 104 at 1, and the

motions to intervene therefore are granted.  *See Lopez v. Bell Sports, Inc.*, 2014 WL 6473533, at

*2 (E.D.N.Y. Nov. 18, 2014) ("Several district courts adjudicating motions to join new

defendants have allowed the proposed new defendants to intervene for the limited purpose of

opposing joinder.").  This opinion and order addresses Plaintiff's motion to amend and join new

parties.[1]

---

[1] Bhogal also moves out-of-time for reconsideration of the Court's August 8, 2022 Order and
Decision granting the SEC's Request for International Judicial Assistance and Letter Rogatory
and requesting the assistance of Canada for his testimony and documents.  Dkt. Nos. 99, 100-2.
The motion is denied as moot in light of the Court's decision to grant the SEC's request to add

# BACKGROUND

## I.     Procedural History

The initial complaint ("Original Complaint") in this case was filed on May 28, 2021. Dkt. No. 1.   It charges defendants Harmel S. Rayat ("Rayat") and RenovaCare, Inc. ("RenovaCare") (collectively, "Defendants") with committing securities fraud in violation of Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78j(b), and Rules 10b-5(a), (b), and (c), promulgated thereunder, 17 C.F.R. § 240.10b-5(a)–(c), and making false statements in an SEC filing in violation of Section 15(d) of the Exchange Act, 15 U.S.C. § 78o(d), and Rules 15d-11 and 12b-20, promulgated thereunder, 17 C.F.R § 240.15d-1, 12b-20. RenovaCare is a public company purportedly engaged in the business of developing medical devices, whose stock traded as a penny stock.  During the period relevant to the Original Complaint, RenovaCare generated no revenue.  Dkt. No. 1 ¶¶ 10, 11.  Rayat, a Canadian national, has been the majority and controlling shareholder of RenovaCare and served as Chairman of its Board of Directors.  *Id.* ¶ 9.  In summary, the Original Complaint alleges that from July 2017 until January 2018, Defendants engaged in a scheme to artificially inflate the trading price of RenovaCare stock by making false and misleading representations about RenovaCare through a purported third-party stock promoter, all without revealing the promoter's relationship to the Defendants and lying when asked about their relationship with the promoter. The Defendants then attempted to and did profit from the StreetAuthority's promotion of RenovaCare.

---

Bhogal as a defendant and the SEC's representation that if the Court granted the motion to amend the complaint and to join Bhogal as a defendant, it would withdraw the Request and seek discovery from Bhogal as a party pursuant to the Federal Rules of Civil Procedure.  Dkt. No. 88 at 9.

More specifically, the Original Complaint alleges that Defendants secretly disseminated false and misleading information about RenovaCare and its experimental medical device for treating burn wounds, "SkinGun," through an online financial publishing company, StreetAuthority, LLC ("StreetAuthority"), which was owned and operated by a long-time friend of Rayat.  The Defendants concealed their involvement in disseminating the information by arranging for the payments to StreetAuthority to be paid through a third-party investor relations company that Rayat had hired in the past for other promotional campaigns.[2]  Rayat would later replace that investor relations company with another investor relations company.  Then, after the stock price of RenovaCare had increased to historically high prices while StreetAuthority's promotion was active, Rayat and his close associates successfully sold shares in the company. The Original Complaint identifies several transactions that were allegedly part of the scheme: Rayat exercised warrants to purchase RenovaCare shares in June 2017; he purchased shares of RenovaCare through a private placement in July 2017; he attempted to sell shares during the promotion through two brokerages; a friend of Rayat purchased shares at a below-market price in October 2017; and "Rayat's long-time friend and the officer manager of Rayat's real estate firm sold millions of dollars of RenovaCare stock at historically high prices while StreetAuthority's promotion was active."  *Id.* ¶ 80.

On or around January 2, 2018, OTC Markets Group Inc., which supervised the market on which RenovaCare's stock was quoted, sent RenovaCare a letter demanding that it make public disclosures concerning its involvement in the StreetAuthority promotion.  *Id.* ¶¶ 47–50.  On January 8, 2018, RenovaCare issued a press release (the "January 8 Press Release") falsely

---

[2] The Original Complaint also alleges that the promoter disseminated false and misleading information about another company of which Rayat was also the controlling shareholder.

denying that it had been involved in the creation and distribution of the promotional materials prepared by StreetAuthority and stating that it was "not affiliated in any way" with the authors of the StreetAuthority report or its publisher. *Id.* ¶¶ 60–69.   The Original Complaint does not name the owner of StreetAuthority (alleged to have formed the agreement with Rayat), the investor relations companies and their principals, or the close associates of Rayat who engaged in the trading of RenovaCare stock or were otherwise involved in the promotion.

Discovery in the case commenced on August 12, 2021 when the Court entered its first Case Management Plan and Scheduling Order.  Dkt. No. 17.  Throughout the course of the litigation, the parties requested numerous extensions to address issues raised by the Covid-19 pandemic, the international scope of the case, and Defendants' election to change counsel.  The Court's initial Case Management Plan and Scheduling Order provided that any motion to amend or join additional parties would be filed no later than September 13, 2021 and that all discovery would be completed by March 25, 2022.  *Id.*  On December 23, 2021, the parties submitted a joint motion to extend the discovery cutoff to May 24, 2022, noting that as a result of logistical challenges and the fact that almost all witnesses were non-parties with separate counsel (and that three of those witnesses resided abroad), they had been able to complete only one deposition. Dkt. No. 40.  The Court granted that motion and entered a new Case Management Plan and Scheduling Order providing that all discovery was to be completed by May 24, 2022.  Dkt. No. 43.  On March 1, 2022, the parties submitted a second joint motion to extend the discovery schedule.  Dkt. No. 53.  This motion acknowledged that no new depositions had been taken since the prior extension was granted in December 2021, and it ascribed that delay to the challenges in scheduling depositions due to concerns arising from the resurgence of Covid-19 in late 2021 to early 2022 and the substitution of new counsel for defendants.  *Id.* at 2.  At the parties' request,

the Court entered an Amended Case Management Plan and Scheduling Order providing that all discovery was to be completed by August 15, 2022.  Dkt. No. 54.

On May 24, 2022, the parties submitted a third joint motion to extend the discovery cutoffs, seeking a new deadline for the close of fact discovery of August 30, 2022, and a close of all discovery of October 30, 2022.  Dkt. No. 77.  The joint letter motion stated that the parties had been able to conduct additional depositions, including that of Sidhu,[3] but it noted that they had been forced to postpone three non-party depositions after several individuals working on the matter contracted Covid-19, and that the parties contemplated taking additional depositions as discovery progressed (including the depositions of the Defendants).  *Id.* at 1.  Thus, as of late May 2022, four depositions had been taken.  The letter announced that the SEC was filing a separate letter with the Court addressing the possibility that it would seek leave of the Court to file an amended complaint, stating that the SEC did not believe that such a possibility materially affected the current request for an extension.  *Id.* at 2.

That same day, the SEC filed a letter indicating that as a result of discovery it had recently obtained, it was considering asking the Court for leave to amend the Complaint.  Dkt. No. 78.  The letter advised that the process of obtaining approval from the Commission—which would be necessary before any amendment could be filed—would typically take four to six weeks but that the SEC staff would explore options to expedite review.  *Id.*  It also expressed the SEC's view that the amendment would not substantially broaden the scope of discovery.  *Id.*

---

[3] As further discussed below, Sidhu's deposition took place pursuant to a Request for International Judicial Assistance sent by this Court to the Supreme Court of British Columbia, in Vancouver, British Columbia, Canada.  Dkt. No. 32.

The Court granted the motion and scheduled the close of fact discovery for August 30, 2022 and the close of all discovery for October 30, 2022.  Dkt. No. 79.[4]

As of today, seven witnesses have been deposed.  Dkt. No. 95 at 8.  Defendants have produced over 5,000 records in discovery and answered two sets of interrogatories.  *Id.*

On July 25, 2022, the SEC filed this motion to file an amended complaint and to join additional parties along with a memorandum of law in support.  Dkt. Nos. 85–86.  Defendants filed a memorandum of law in opposition to the motion on August 8, 2022, Dkt. No. 95, and the SEC filed a reply memorandum in further support of its motion on August 15, 2022, Dkt. No. 103.  Meanwhile, on August 5, 2022, the Court received a letter from counsel for Fleming stating her opposition to the motion, Dkt. No. 91, and a letter from counsel for Bhogal stating the same, Dkt. No. 96.  The Court issued an order that the letters would not be considered by the Court unless counsel for the non-parties filed a motion to intervene.  Dkt No. 94.  Sidhu filed a motion to intervene and a memorandum in support of that motion on August 8, 2022.  Dkt. Nos. 92–93.  Fleming filed a motion to intervene and a memorandum of law in support of her motion on August 10, 2022.  Dkt. Nos. 97–98.  Bhogal filed a motion to intervene and a memorandum of law in support of that motion on August 10, 2022.  Dkt. Nos. 99–100.  The SEC filed a memorandum in opposition to the motions to intervene on August 15, 2022.  Dkt. No. 104.[5]

---

[4] On July 5, 2022, on motion of the SEC, the Court issued a Request for International Judicial Assistance to the Central Authority in the Federal Republic of Germany, requesting the assistance of that authority in obtaining the testimony of non-party witness, Thomas Bold, the former Chief Executive Officer of RenovaCare.  Dkt No. 84.  On August 8, 2022, on motion of the SEC, the Court also issued a Request for International Judicial Assistance to the Supreme Court of British Columbia, in Vancouver, British Columbia, Canada, seeking its assistance in compelling the appearance of Bhogal for a deposition.  Dkt. No. 90.  The SEC's letter motion requesting that relief stated that if the Court granted the motion to amend the complaint and to join Bhogal as a defendant, it would withdraw the Request and seek discovery from Bhogal as a party pursuant to the Federal Rules of Civil Procedure.  Dkt. No. 88 at 9.

[5] On August 14, 2022, the Court granted the joint letter motion of the parties to stay the deadline

II.    **The Proposed Amended Complaint**

The SEC's memorandum of law in support of the motion attaches its proposed amended complaint ("Amended Complaint").  Dkt. No. 86-1.  The Amended Complaint continues to center on the StreetAuthority promotional campaign (the "StreetAuthority campaign")[6] and the undisclosed involvement in it by Rayat and RenovaCare from July 2017 until February 2018 (rather than the Original Complaint's end date of January 2018).  The alleged misrepresentations are identical.  StreetAuthority's campaign misrepresented the efficacy and regulatory status of SkinGun.  *Id.* ¶¶ 117–24.  RenovaCare issued the false January 8 Press Release.  *Id.* ¶¶ 152–64.  However, the Amended Complaint dates the commencement of the fraudulent scheme back to 2007 and contains significant additional detail regarding the involvement of Rayat in it as well as the involvement of Sidhu, Bhogal, and Fleming—each of whom the Amended Complaint names as defendants.

The Amended Complaint divides the scheme into four "Steps."  Step One, described as "Setting the Table" for the scheme, alleges the "[a]ccumulat[ion of] RenovaCare [s]tock [by Defendants and Proposed Defendants] [t]o [s]ell [d]uring [t]he [s]cheme" from 2007 to 2013.  *Id.* ¶¶ 45–46.  Two friends and business associates of Rayat—Bhogal, who is described as a "strategic advisor" to RenovaCare, *id.* ¶ 26, and Sidhu, who is described as member of the board of RenovaCare's predecessor entity, *id.* ¶ 27 (and as "Rayat's long-time friend and the officer manager of Rayat's real estate firm" in the Original Complaint, Dkt. No. 1 ¶ 80)—purchased millions of shares of RenovaCare from Rayat through entities that they controlled for little or no money in exchange for debt or equity interests that permitted Rayat to maintain a financial

---

for completing discovery while the motion to amend was pending.  Dkt. Nos. 101–02.

[6] The Amended Complaint refers to the StreetAuthority campaign as the Predictions Campaign. *Id.* ¶ 6.  The Court continues to refer to the campaign as the StreetAuthority campaign for purposes of convenience.

interest in any later sale of the RenovaCare shares.  Dkt. No. 86-1 ¶¶ 45–46.  In addition,
Fleming, described as "a third-party investor relations consultant to RenovaCare . . . . [d]uring
the [StreetAuthority campaign]," *id*. ¶ 28, acquired 300,000 RenovaCare shares in a private
placement, *id*. ¶ 47.  Beginning no later than 2013, Bhogal, Fleming, and Sidhu—along with
Rayat—"closely coordinated their brokerage accounts."  *Id.* ¶ 52.  Among other things, Fleming
opened an account with a broker dealer whom Rayat had recommended.  *Id*.  Sidhu coordinated
the transfer of shares to various entities that he and Bhogal controlled and worked together with
Bhogal to deposit shares with another U.S. broker dealer.  *Id.* ¶¶ 54–55.  Sidhu and Bhogal also
worked with RenovaCare to remove the restricted legend on their shares and to register the
shares so that they could be sold publicly.  *Id.* ¶¶ 56–58, 60–61.  In June 2017, Rayat also
coordinated account openings with Bhogal and Sidhu.  *Id.* ¶ 63.

Step Two of the alleged scheme is described as "Scalping."  *Id*. ¶¶ 68–136.  It is the
lengthiest part of the Amended Complaint.  Aside from some background information and
substantial additional evidentiary detail (including about the three new Proposed Defendants), it
largely repeats the allegations of the Original Complaint regarding the use of StreetAuthority to
falsely promote RenovaCare and make false statements about SkinGun.  The Amended
Complaint alleges that Bhogal arranged for the purchase of the technology related to SkinGun,
*id*. ¶¶ 69–70, and that he worked closely with Rayat, Fleming, and another investor relations
consultant to promote the company, *id*. ¶ 70.  It further alleges that by October 2015, Rayat had
worked with Sidhu, Bhogal, Fleming and others to develop RenovaCare's "investor relations"
strategy that would temporarily increase the price and trading volume of RenovaCare shares as
they sold shares.  *Id.* ¶ 73.  Defendants' business model, as conceived then, and as executed later

8

in 2018 through StreetAuthority, involved the funding of a short-term promotional campaign through a third-party investor relations consultant. *Id.* ¶ 76.

The Amended Complaint alleges the role of the three new Proposed Defendants with the StreetAuthority campaign. Rayat and Bhogal selected the third-party service providers who were to work on the StreetAuthority promotion and to funnel payments to StreetAuthority. *Id.* ¶ 101. Fleming was one of those third-party service providers; she also provided the false disclaimer to an investor relations consultant who replaced her. *Id*. ¶¶ 101, 103–04, 107, 114. Then, "while Fleming and Rayat worked with StreetAuthority and RenovaCare on the promotional campaign, Sidhu and Bhogal began selling RenovaCare shares in a highly coordinated manner." *Id*. ¶ 129. A day after she was replaced as the investor relations consultant, Fleming stopped handling the payments that RenovaCare made to StreetAuthority through her investor relations company for the campaign and sold 7,000 shares of her RenovaCare stock notwithstanding that she had been directly involved in the campaign and knew that the paid promotion she had helped organize was ongoing. *Id.* ¶ 133. For his part, Bhogal knew about the campaign because, *inter alia*, Rayat sent him an email between Rayat and StreetAuthority about the campaign, and Bhogal participated in a phone call with StreetAuthority representatives and Rayat. *Id.* ¶ 135. Sidhu knew about the campaign because, *inter alia*, he was in daily contact with Rayat while Rayat worked on the campaign, he sent a package to StreetAuthority representatives at Rayat's requests, and he planned two of Rayat's trips to visit StreetAuthority in Austin, Texas. *Id.* ¶ 136. The transactions by the two of them in RenovaCare tracked the timing and progress of the StreetAuthority campaign. *Id.* ¶¶ 135–36.

Step Three of the scheme in the Amended Complaint consists of alleged "Misrepresentations, Omissions, and Related Fraudulent Conduct" in the January 8 Press

Release.  That section of the Amended Complaint largely tracks the allegations of the Original Complaint that, in response to an inquiry from the supervisory authority of the market on which RenovaCare stock was quoted, Rayat and RenovaCare lied and falsely denied that RenovaCare and its officers, directors or controlling shareholder had a role in the promotion.  It also adds an allegation, not found in the Original Complaint, identifying Bhogal by name and stating that he aided and abetted RenovaCare's false statements.  *Id.* ¶¶ 165–66.

Step Four of the Amended Complaint, described as "Manipulative Trading and Related Conduct," appears to be mostly new.  It alleges that after issuing the January 8 Press Release, the defendants named in the Amended Complaint restarted the promotional campaign and resumed trading.  *Id.* ¶¶ 167–93.  It contains allegations of stock trading by Fleming, Bhogal, and Sidju, and the issuance of a false press releases by RenovaCare, assisted by Rayat and Bhogal, in response to a suggestion by StreetAuthority.  The Amended Complaint alleges that the scheme collapsed in February 2018.  *Id.* ¶¶ 192–93.

Finally, the Amended Complaint alleges that Rayat and the three new individual Proposed Defendants together reaped over $7.5 million in ill-gotten gains from trading in RenovaCare stock.  *Id.* ¶ 196.

The Amended Complaint would (1) add Sidhu, Bhogal, and Fleming as defendants, (2) add as relief defendants four entities owned by Sidhu or Bhogal that transacted in RenovaCare stock allegedly in furtherance of the scheme (1420527 Alberta Ltd., Blackbriar Asset Management Ltd., Treadstone Financial Group Ltd., and Treadstone Financial Group LLC) and add a claim for unjust enrichment against the relief defendants, (3) add new claims under Section 17(a) of the Securities Act of 1933 ("Securities Act") and Sections 9(a)(2) and 20(b) of the

Exchange Act, and (4) add a claim for relief of disgorgement of ill-gotten gains against all defendants except for RenovaCare.

## LEGAL STANDARD

Federal Rule of Civil Procedure 15(a) provides that leave to amend a pleading "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). The court may deny such a motion only on grounds of "undue delay, bad faith, dilatory tactics, undue prejudice to the party to be served with the proposed pleading, or futility." *Quaratino v. Tiffany & Co.*, 71 F.3d 58, 66 (2d Cir. 1995) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). However, "[m]ere delay . . . absent a showing of bad faith or undue prejudice, does not provide a basis for a district court to deny the right to amend." *State Teachers Ret. Bd. v. Fluor Corp.*, 654 F.2d 843, 856 (2d Cir. 1981). Rather, "[t]he rule in this Circuit has been to allow a party to amend its pleadings in the absence of a showing by the nonmovant of prejudice or bad faith." *Sherman v. Fivesky, LLC*, 2020 WL 5105164, at *3 (S.D.N.Y. Aug. 31, 2020) (quoting *Block v. First Blood Assocs.,* 988 F.2d 344, 350 (2d Cir. 1993)). "While the party seeking to amend its pleading must explain any delay, the party opposing the amendment bears the burden of showing prejudice, bad faith, and futility of the amendment." *Contrera v. Langer*, 314 F. Supp.3d 562, 567 (S.D.N.Y. 2018) (cleaned up).

Under Rule 21, a court may allow a party to be added or removed "at any time, on just terms." Fed. R. Civ. P. 21. "In deciding whether to permit joinder, courts apply the same standard of liberality afforded to motions to amend pleadings under Rule 15." *New York Wheel Owner LLC v. Mammoet Holding B.V.*, 481 F.Supp.3d 216, 249 (S.D.N.Y. 2020) (quoting *Bridgeport Music, Inc. v. Universal Music Grp., Inc.*, 248 F.R.D. 408, 412 (S.D.N.Y. 2008)); *see also Tarr v. Acto Techs., Inc.*, No. 19-cv-7703 (S.D.N.Y. Dec. 29, 2020), Dkt. No. 50 at 3. In addition, Rule 20(b) provides that "[p]ersons . . . may be joined in one action as defendants if:

(A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(b); *see also O'Gorman v. Mercer Kitchen L.L.C.*, 2021 WL 602987, at *1 (S.D.N.Y. Feb. 16, 2021).

"The generous approach that courts take to Rule 15 and Rule 21 motions does not extend to motions filed after a previously ordered deadline has run." *Cheng v. Via Quadronno LLC*, 2022 WL 1210839, at *2–3 (S.D.N.Y. Apr. 25, 2022). Thus, "[w]hen a party files a motion to amend after the pleading deadline set forth in the case management plan and scheduling order, Fed. R. Civ. P. 16(b) governs and the party must establish 'good cause' to amend its pleadings." *Pristine Jewelers NY, Inc. v. Broner*, 492 F. Supp. 3d 130, 131–32 (S.D.N.Y. 2020) (citing *Sherman*, 2020 WL 5105164, at *1). "To show good cause, a movant must demonstrate diligence before filing her motion, such that despite the movant's effort, the deadline to amend the pleadings could not have been reasonably met." *Scott v. Chipotle Mexican Grill, Inc.*, 300 F.R.D. 193, 197 (S.D.N.Y. 2014). "[T]he good cause standard of Rule 16 is not satisfied when the proposed amendment rests on information that the party knew or should have known, in advance of the deadline." *Sherman*, 2020 WL 5105164, at *1 (quoting *DeCastro v. City of New York*, 2020 WL 4932778, at *7 (S.D.N.Y. Aug. 24, 2020)). "The Court 'also may consider other relevant factors, including, in particular, whether allowing the amendment of the pleading at this stage of the litigation will prejudice [non-movants].'" *Weng v. HungryPanda US, Inc.*, 2021 WL 1750305, at *2 (S.D.N.Y. May 4, 2021) (quoting *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 244 (2d Cir. 2007)). "Even if good cause is established . . . , a court may deny a motion to amend if the proposed amendment 'would be futile, unduly prejudicial, or otherwise improper . .

. .'" *DeCastro*, 2020 WL 4932778, at *7 (quoting *Youngers v. Virtus Inv. Partners Inc.*, 2017 WL 5991800, at *6 (S.D.N.Y. Dec. 4, 2017)).  "[A] finding of 'good cause' depends on the diligence of the moving party," *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 340 (2d Cir. 2000), as well as on "whether allowing the amendment of the pleading at this stage of the litigation will prejudice defendants," *Kassner*, 496 F.3d at 244.

## DISCUSSION

Defendants and Proposed Defendants both argue that Plaintiff's motion to amend and to join additional parties should be denied on grounds of undue delay and prejudice and for failure to establish good cause.  In particular, the Defendants argue:

- that the information that led the SEC to pursue charges against the Proposed Defendants was available to the SEC before it brought this lawsuit and that the SEC showed a lack of diligence in pursuing the potential "line[s] of inquiry for a period of years,"  Dkt. No. 95 at 21;

- that the Defendants would suffer prejudice from the conversion of the matter from a two-defendant case focused on a seven-month time period to a five-defendant case focused on a 11-year time period;

- that the introduction of new defendants in this case would delay the case's resolution for at least a year to the Defendants' detriment, leaving Rayat under a continued cloud and preventing RenovaCare from engaging in an FDA-approved clinical trial;

- that "[g]ood cause does not exist for the SEC to take a mulligan on its investigation . . . when the parties are about to complete fact discovery," *id.* at 16.

- that the SEC was not forthright with the Court because the SEC's May 24, 2022 letter stated that the contemplated amendment of the Complaint would not substantially broaden discovery and omitted that the SEC would seek to add the three new Proposed Defendants; and

- that the SEC violated its commitment to the British Columbia Supreme Court made through the Letter of Request not to use evidence given by Sidhu in deposition to "advance . . . claims against Sidhu," *id.* at 1, 10–12 (quoting Dkt. No. 95-8 ¶ 2).

The Proposed Defendants largely echo these arguments.  Sidhu argues that the SEC has violated its commitment to the British Columbia Supreme Court to not use his compelled

testimony against him in this proceeding; that the SEC failed to timely investigate him; that an amendment would unduly prejudice the current Defendants as Sidhu would seek to reopen discovery and file motions; and that the amendment would be futile. *See* Dkt. No. 93-1.  Bhogal likewise argues that the SEC has failed to demonstrate good cause because it possessed information about his involvement in RenovaCare press releases and his purchases and sales of RenovaCare shares.  Bhogal also adds the claim that the SEC acted in bad faith by negotiating to obtain his testimony (which it has not yet taken) without telling him, prior to Commission authorization, that he might be added as a defendant.  Dkt. No. 100-3.  Fleming argues that the SEC has not shown good cause to add her now to the case based on allegations nearly completely overlapping with those in the Original Complaint.  She further claims that she would suffer severe prejudice in the form of getting up to speed on discovery, taking new discovery, and making motions.  Dkt. No. 91.  Based on those premises, the Defendants and Proposed Defendants ask the Court to conclude that the SEC should have joined the three Proposed Defendants in the Complaint or at least by the September 2021 deadline for amendments and joinder of parties.

The Defendants' and Proposed Defendants' arguments that the SEC lacks good cause and has unduly delayed are unconvincing.  The Amended Complaint rests on significant new information that the SEC did not have at the time that it filed its Original Complaint.  Further, the SEC has provided good cause for why it was not able to obtain that evidence before the September 13, 2021 deadline for filing an amended complaint and joining new parties.  To be sure, the SEC had information before the filing of the Original Complaint that Rayat had sold RenovaCare common shares to Sidhu for redeemable preferred shares in a British Columbia entity owned by Sidhu, Dkt. No. 95 at 19–20, that in November 2019, Rayat had received

preferred shares in Bhogal's entity in exchange for RenovaCare stock he provided to Bhogal, *id.* at 20–21, and that Fleming had engaged in the purchase and sale of RenovaCare shares, *id.* at 21. But the SEC lacked the necessary information to know the significance of those transactions— namely, that the transactions were part of an alleged coordinated effort by the three Proposed Defendants and Rayat to pump up the price of RenovaCare shares and then to dump their stock.

The SEC's lack of access to that information resulted not from its own lethargy, but from Defendants' failure to provide that information to the SEC. Rayat admitted in his SEC investigative testimony that, in exchange for his transfer of RenovaCare stock to Sidhu and Bhogal, he received preferred shares in the companies that held those shares. However, Rayat characterized the transfer as a "gift," "as [his] way of saying thank you" to Sidhu and Bhogal, who Rayat described as "good employees," and that he "never had any expectations . . . of any kind of cash or monetary return." Dkt. No. 86-3 at 150–51, 155. The SEC was not able to obtain Sidhu's testimony during the investigative phase because he is a resident of Canada. When efforts to obtain his voluntary testimony failed after this case was filed, the SEC moved promptly for the issuance of a Letter of Request to the Supreme Court of British Columbia in Vancouver for its assistance in obtaining his testimony. Dkt. No. 31. The Court signed the Letter of Request on November 29, 2021. Dkt. No. 32. His deposition was delayed until March 2022, in part as a result of the change of counsel by Defendants. Dkt. No. 53. When the SEC was able finally to obtain his testimony, Sidhu made clear that "[Rayat] didn't gift me stock. He sold me stock . . . ," Dkt No. 86-2 at 40, and that Rayat benefitted from Sidhu's stock sales. Among other things, Rayat had a significant equity interest in another entity, Blackbriar Asset Management Ltd., that sold RenovaCare shares in January and February 2018. *Id.* at 46–49. In addition, Rayat arranged for another Sidhu entity, Collingwood Holdings, LLC, to purchase

RenovaCare stock by encouraging Sidhu to buy the shares, introducing him to the seller, and then lending the entity $1.2 million with which to buy the shares on a loan that remains outstanding.  Dkt. No. 86-2 at 56–58.

There were also deficiencies in the document production at the investigative stage that the SEC could address only after litigation commenced.[7]  Rayat, Bhogal, or Fleming did not produce electronic messages from platforms such as Skype and WhatsApp.  In fact, Rayat testified that he deleted electronic messages "until I was told not to."  Dkt. No. 86-3 at 17–18.  There is evidence that he continued to delete messages even after he knew that the SEC had commenced an investigation and subpoenaed RenovaCare.  *See* Dkt. No. 86-4.  Although Sidhu did not respond to SEC attempts to secure his cooperation, the SEC used tools of civil discovery to obtain Skype messages demonstrating Rayat's involvement in the promotion by StreetAuthority in February 2018—a date later than that initially alleged in the Original Complaint.  *Id*.  Skype messages produced by a third party also demonstrated Bhogal's involvement with the StreetAuthority campaign, Dkt. No. 104-13, 103-14, and contradicted his investigative testimony that he was not involved with the January 8 Press Release. *Compare* Dkt. No. 104-10 at 190 (testimony that Bhogal was not involved with the release or the timing of the release) *with* Dkt. No. 104-15 (Skype message showing Bhogal's involvement with the timing of release).  Fleming produced a new email demonstrating her involvement in the continuation of the StreetAuthority campaign at the same time as she was selling RenovaCare stock.  Dkt. No. 104-18.

---

[7] The SEC has stated that Rayat destroyed documents and that the new defendants failed to retain and produce relevant documents.  The Court need not conclude whether any defendant engaged in any intentional improper conduct during the investigation to conclude that the SEC acted diligently in this case.

On April 28, 2022, Rayat filed a motion for a protective order seeking to prevent the SEC from obtaining documents from him about specific transactions going back to 2007.  Dkt. No. 55.  The Court denied that motion, finding that "the SEC has explained why it could not readily obtain at least certain of the information during the investigative phase" and that "no rule of law requires the SEC to request in the investigative stage every document that might turn out to be relevant in the litigation phase."  Dkt. No. 65 at 5–6.  The Court also concluded that the requested documents were relevant, as they went to "central issues in this case—whether Rayat had a financial motive to 'pump' the price of RenovaCare and whether he profited from the increase in its price during the period of the alleged scheme."  *Id.* at 5.  Among the documents produced by Rayat in response to the requests permitted by the Court were emails from him to Sidhu and Bhogal regarding the opening of brokerage accounts and transactions in RenovaCare shares that show the coordination of trading accounts.  Certain emails also demonstrate Sidhu's involvement and knowledge of Rayat's involvement with the StreetAuthority promotion.  The emails were produced by him in June 2022, well after the amendment and joinder deadline.  Dkt No. 103, Tbl. A.  The SEC also obtained from third parties numerous other documents probative of the scheme alleged in the complaint.  *Id.*

The SEC's inability to obtain the testimony of Sidhu during the investigative stage, the SEC's diligence in obtaining his testimony after this lawsuit was brought, the significance of that testimony, the delay caused by Rayat's motion for a protective order, and the importance of the documents produced by him and the other third parties, each independently establish good cause for the SEC's out-of-time motion.  The Sidhu testimony establishes Rayat's profit motive and the documents show the participation of the Proposed Defendants in the allegedly fraudulent scheme.  Those facts also establish that the SEC acted with diligence in bringing the Amended

Complaint and that it did not move with undue delay.  *See S.E.C. v. DCI Telecommunications, Inc.*, 207 F.R.D. 32, 34 (S.D.N.Y. 2002) (finding no undue delay where the SEC claimed that critical evidence was recently revealed).

The Defendants and Proposed Defendants also base their argument on a legally flawed premise:  they assume that because the SEC was in possession of information that would have supported further inquiry into the conduct of the Proposed Defendants, it was required to have completed that inquiry before it brought the case against the Defendants.  In short, under their view, the time from when the SEC had clues as to Proposed Defendants' involvement—and not the time from the filing of the Original Complaint—should determine whether there is good cause or there has been undue delay.  Defendants and Proposed Defendants, however, cite no law for that proposition.

Good cause and its cousin undue delay, as they have been interpreted by the courts, refer to delay from the date of the filing of the complaint to the filing of an amendment or, in the case of good cause, from the date of the deadline for amendment to the filing of an amendment.  It speaks to the harm caused to judicial efficiency and to the potential for prejudice to the opposing party when the movant sits on evidence it has obtained in the case before seeking to amend.  *See*, *e.g.*, *Verdone v. Am. Greenfuels*, LLC, 2017 WL 3668596, at *4 (D. Conn. Aug. 24, 2017) (assessing "good cause" in terms of the "Court's interest in judicial economy"); *see also Sly Magazine, LLC v. Weider Publ'ns L.L.C.*, 241 F.R.D. 527, 532 (S.D.N.Y. 2007) (describing general judicial economy interests underlying joinder).  It does not speak to the thoroughness of the pre-suit investigation.  The rule that speaks to the thoroughness of the pre-suit investigation is Rule 11, which as a general matter requires only that the complaining party have engaged in an "inquiry reasonable under the circumstances" to determine whether its factual contentions have

18

evidentiary support.  Fed. R. Civ. P. 11(b).  While the SEC plainly is required to act with

diligence on information that it knew or should have known from its investigation, *see*, *e.g.*,

*Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 340 (2d Cir. 2000) (finding that plaintiff had

not established good cause when he possessed evidence relevant to his claim prior to the

complaint), it is not required before suing one defendant to run down every last lead it would

have against every other proposed defendant during the investigative stage.  *Cf. Oneida Indian*

*Nation of N.Y. v. Cnty of Oneida*, 199 F.R.D. 61, 74–76 (N.D.N.Y. 2000) (rejecting argument of

undue delay by the federal government because it moved to amend shortly after having moved to

intervene notwithstanding argument by defense that it took the government "over a generation"

to decide whether to intervene).

        Neither the SEC's interest, nor the interests of a subject of an investigation, would be

served by Defendants' articulation of a "good cause" or "undue delay" standard that extends to

the scope and thoroughness of investigatory matters prior to the filing of an initial complaint.

Requiring the SEC to conclude its investigation as to all potential members of a scheme before

suing any of them, on pain that it would later be significantly time-limited in its ability to amend

to do so, would undercut the SEC's "statutory mandate to protect the public interest through

*prompt* and effective enforcement of the federal securities laws."  *Treats Int'l Enters., Inc. v.*

*S.E.C.*, 828 F. Supp. 16, 18 (S.D.N.Y. 1993) (emphasis added) (quoting H. Rep. No. 1321, 96th

Cong., 2d Sess. 4 (1980), *reprinted in* 1980 U.S.C.C.A.N. 3874, 3878).  Such a standard would

also disserve the interests of a subject of an investigation, who has an expectation that the SEC

will keep its investigation confidential and not profligately shower every person who might have

relevant information with a request before it has decided whether the case merits prosecution, *see*

SEC Enforcement Manual, § 5.1, available at

https://www.sec.gov/divisions/enforce/enforcementmanual.pdf (describing the access policy to information from the SEC's investigation).  In any event, there is no evidence that the SEC acted with anything other than diligence during the pre-Original Complaint investigative stage.  Even if there were, the record establishes that it acted with diligence in uncovering the evidence that permitted it to file the Amended Complaint and that it has good cause for not doing so within the time permitted by deadline for amendment.

With respect to Defendants' claims of "undue prejudice," which is "perhaps [the] most important" factor in the Rule 15(a)(2) analysis, *Flour Corp.*, 654 F.2d at 856, Defendants have not established that the amendment would require them to expend significant additional resources or that it would significantly delay the resolution of the dispute.  "In determining what constitutes 'prejudice,' [courts] generally consider whether the assertion of the new claim or defense would '(1) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction.'"  *Monahan v. New York City Dep't of Corrections*, 214 F.3d 275, 284 (2d Cir. 2000) (quoting *Block*, 988 F.2d at 350); *see also Phoenix Light SF Ltd. v. HSBC Bank USA, N.A.*, 2021 WL 568080, at *2 (S.D.N.Y. Feb. 16, 2021); *Ramirez v. Bernstein*, 2020 WL 7230729, at *3 (S.D.N.Y. Dec. 7, 2020); *Port Auth. Police Benevolent Ass'n, Inc. v. Port Auth. of New York & New Jersey*, 2016 WL 6083956, at *7 (S.D.N.Y. Oct. 17, 2016).

In claiming undue prejudice, Defendants argue that the amendment would require them to "conduct discovery on the SEC's new Complaint, which is far broader and more complex than the one that has been the subject of discovery to date."  Dkt. No. 95 at 12.  Defendants' argument is overstated.  The claims for relief in the Amended Complaint, as in the Original Complaint,

remain centered on the StreetAuthority campaign and January 8 Press Release.  *See* Dkt. No. 86-1 First Claim for Relief ¶¶ 205–07 (alleging that Defendants violated Section 10(b) of Exchange Act by engaging in the StreetAuthority campaign and January 8 Press Release); Second Claim for Relief ¶¶ 208–11 (alleging that Rayat and Bhogal aided and abetted violations of Section 10(b) in connection with January 8 Press Release); Third Claim for Relief ¶¶ 212–14 (alleging Defendants' violations of Section 17(a) of the Securities Act in connection with the StreetAuthority campaign and January 8 Press Release); Fourth Claim for Relief ¶¶ 215–18 (alleging that Bhogal aided and abetted a violation of Section 17(a) in connection with January 8 Press Release); Fifth Claim for Relief ¶¶ 219–22 (alleging that Rayat, Bhogal, Sidhu, and Fleming violated Exchange Act Section 20(b) in connection with the StreetAuthority campaign); Sixth Claim for Relief ¶¶ 223–25 (alleging that Bhogal, Sidhu and Fleming violated Exchange Act Section 9(a)(2) in connection with their trading activity in February 2018; no allegation against Rayat and RenovaCare); Seventh Claim for Relief ¶¶ 226–30 (alleging that RenovaCare violated Exchange Act Section 15(d) based on its conduct before and during the StreetAuthority campaign and in connection with January 8 Press Release); Eighth Claim for Relief ¶¶ 231–34 (alleging an unjust enrichment claim against relief defendants based on profits reaped as a result of the StreetAuthority campaign, January 8 Press Release, and February 2018 conduct).

To be sure, the Amended Complaint alleges conduct that reaches back to 2007 when the Original Complaint itself reached back only to 2017.  That extension, however, could not have been a surprise, nor does it represent a significant expansion.  Defendants had notice of the claim and the new allegations arise from the same transactions as the claims in the original pleading. *See A.V.E.L.A., Inc. v. Estate of Monroe*, 34 F. Supp.3d 311, 317 (S.D.N.Y. 2014) ("Whether [the opposing] party had prior notice of [the new] claim and whether th[at] claim arises from the

same transaction as the claims in the original pleading are central to [the prejudice] determination." (citing *Monahan*, 214 F.3d at 284)).  The Court also addressed precisely this issue in May 2022, well before there was a proposed Amended Complaint, when resolving Rayat's motion for a protective order.  In response to Defendants' argument that conduct going back to 2007 was irrelevant to the allegations in the Original Complaint, the Court ruled to the contrary that it went to "central issues in this case."  Dkt. No. 65 at 5.  The Court did not exclude such evidence on grounds that the date made it irrelevant.  All that the Amended Complaint did with respect to the Defendants was to add the evidentiary detail.

The thrust of Defendants' argument is that the resolution of the case against them would be delayed by the discovery that the Proposed Defendants would have to take, in re-deposing witnesses, reviewing documents already produced in discovery, making new documents requests, and engaging in reciprocal requests for admission and interrogatories.  Dkt. No. 95 at 12, 16.  Defendants also suggest that there might be some delay caused by the right of the new defendants to make motions addressed to the pleadings.  But the argument that new allegations will require new discovery can be made in any case where an amendment expands the case.  Such a "'burden . . . , standing alone, does not suffice to warrant denial of a motion to amend a pleading.' . . .  Were it otherwise, Rule 15's promise that leave to amend shall be freely granted would be rendered illusory and courts would be constrained to reject all but those amendments that merely regurgitate the factual allegations of the original complaint but only under different labels." *Sherman*, 2020 WL 5105164, at *3 (quoting *United States v. Continental Illinois Nat'l Bank & Trust Co. of Chicago*, 889 F.2d 1248, 1255 (2d Cir. 1989)).  With respect to joinder, there will always be some delay when a new defendant is added to a case after discovery has

already started.  Each defendant, after all, has a right to review the discovery that has already been exchanged and to make some requests to address the claims against it.

In addition, Defendants and Proposed Defendants have not shown that the amendment or a subsequent motion to dismiss will significantly delay the resolution of the dispute.  Seven depositions have been taken.  Some of them may need to be reopened.  Documents have been exchanged.  The Proposed Defendants will have to review them.  But discovery has not yet closed, depositions remain to be taken, no dispositive motions have been filed, and no trial date has been set.  *See A.V.E.L.A.*, 34 F. Supp.3d at 318 (finding no prejudice where "discovery was not yet closed, nor had any dispositive motions been filed").  And, as to motions to dismiss, assuming they are made, there is no reason why the defendants cannot actively participate in discovery while the legal issues are under consideration by the Court.  *See Hong Leong Finance Ltd. (Singapore) v. Pinnacle Performance Ltd.*, 297 F.R.D. 69, 72 (S.D.N.Y. 2013) ("A motion to dismiss does not automatically stay discovery, except in cases covered by the Private Securities Litigation Reform Act.").  There is no reason why such motions must delay the completion of discovery in this case.

Tellingly, Defendants assert no specific prejudice to them from the delay.  They make only the conclusory assertion that "RenovaCare is unable to carry out FDA-approved clinical trials of its burn-treatment product while this action is pending," Dkt. No. 95 at 17, and that Rayat has put his life "on hold," *id*. at 18.  But those statements are not only unsupported, but also ring hollow considering Defendants' silence during previous delays.  A good amount of the delay in this case has been a result of the Defendants' change in counsel.  The Court does not begrudge them that decision, but until the motion to amend the complaint, Defendants never

demonstrated any interest in expediting the case against them.  Moreover, discovery in this case has been outstanding for only one year.

Defendants' argument that the SEC acted with "bad faith" is also without merit.  Bad faith as used with respect to a motion to amend does not serve as an invitation for the party opposing amendment to raise every generalized grievance it has with respect to the litigation tactics and style of the movant.  It refers to the objective with which the motion to amend is made, including whether, on the one hand, based on the motion's timing and content, the movant intended "solely to gain a tactical advantage," *Oneida Indian Nation of N.Y. v. Cnty. of Oneida*, 199 F.R.D. 61, 80 (N.D.N.Y. 2000); *see also Primetime 24 Joint Venture v. DirecTV, Inc.*, 2000 WL 426396, at *6 (S.D.N.Y. Apr. 20, 2000) (holding that whether the moving party's reasons for seeking leave to amend are "proffered dishonestly," the "relevant issue" is whether the moving party "sought to derive some tactical advantage") or to "annoy, harass, and delay," *Fezzani v. Bear, Stearns & Co.*, 2022 WL 782751, at *2 (S.D.N.Y. Mar. 15, 2022) (internal quotation marks omitted), or on the other hand, whether the movant sought "to facilitate a proper decision on the merits," *Foman*, 371 U.S. at 182 (quoting *Conley v. Gibson*, 355 U.S. 41, 48 (1957)).  There is no basis to believe that the SEC has moved to amend to gain a tactical advantage or to annoy, harass, or delay.  The SEC has acted with appropriate expedition in prosecuting this action and made the motion as soon as it reasonably believed it had the evidence to support the additional charges.  Those additional charges all arise out of the same nucleus of operative facts and are intended to facilitate the efficient and proper decision of this case based on all the relevant facts.

In addition, the Court does not consider the SEC's May 24, 2022 letter to be misleading. Consistent with the Amended Complaint that ultimately was filed, the SEC's letter states that the

amendment "would relate to the scheme already alleged in the Complaint."  Dkt. No. 78.  It also states that "[f]rom the SEC's perspective, only a limited amount of additional discovery would be required."  *Id.*  The Court expects to hold the SEC to that representation.  But the letter does not purport to speak on behalf of the Defendants.  Nor can the Court fault the SEC for not mentioning that it might add new defendants to the case.  It would not necessarily have been appropriate for the SEC to mention that there would be new defendants—and to cause the public to speculate as to who those new defendants might be—until after the Commission itself had authorized the filing of an amendment and the bringing of charges against new defendants.

The Court also rejects the argument that the SEC failed to abide by the limitations of the order of the British Columbia Supreme Court pursuant to which the SEC took Sidhu's testimony.  That order expressly provided: "[t]he evidence given and documents produced by Sidhu are to be used only in the U.S. Proceeding and not for any other purpose."  Dkt No. 93-2 ¶ 10.  In turn, the "U.S. Proceeding" is defined as this case.  *Id.* ¶ 12(a)(i).  The Order goes on to say that "[i]n particular, no document produced, no testimony given, and no evidence derived from any such evidence shall be used in subsequent proceedings against the party who produced the document or gave the testimony, except as proof of a prior inconsistent statement or in prosecution for perjury," *id.* ¶ 11, and then adds "that the documents and evidence will not be used to advance, in *any* proceeding, directly or indirectly, any claims against [Sidhu] or any entities related to him," *id.* ¶ 12(a)(i) (emphasis added).  The SEC also executed an undertaking that it would not use the "documents and evidence" obtained pursuant to the order of the British Columbia Supreme Court "to advance, in any proceeding, directly or indirectly, any claims against Mr. Sidhu or an entities related to him."  Dkt No. 93-3 ¶ 2(a).  The Order thus makes clear: (1) the anticipation that the "documents and evidence" may be used in *this* proceeding albeit not to advance any

25

claims against Sidhu; and (2) that the only limitation on the SEC is that it not use the documents or evidence against Sidhu.  There is no other limitation against suing Sidhu in this action.

Sidhu has not identified any documents or evidence that the SEC uses in the Amended Complaint to advance the claim against him.  In his opposition to the amendment, Sidhu mentions that the SEC attaches his testimony to its motion to amend and characterizes it as a "watershed moment."  Dkt. No. 93-1 at 2.  But the Order and the SEC undertaking expressly permit the SEC to use the Sidhu testimony in this proceeding generally—that is the reason why the SEC requested and the Court signed the Letter of Request.  And the testimony was in fact used in this proceeding for the procedural purpose of seeking permission to file an amended complaint as well as perhaps the substantive purpose of identifying evidence that could be offered against the other defendants.  The only proscription is that it not be used to advance a claim against Sidhu (save for use as a prior inconsistent statement) and Sidhu has offered no persuasive evidence that the SEC intends to use the testimony or documents for that purpose. [8] Tellingly, the SEC does not seek to use the testimony or documents obtained pursuant to the Order to advance a claim against Sidhu in this proceeding.[9]  It seeks to use the testimony against Rayat.  Dkt. No. 104 at 8.[10]

---

[8] Sidhu claims that the allegations in paragraphs 46 and 196 of the Amended Complaint that Rayat sold RenovaCare shares to entities controlled by him and Bhogal, that a $1.2 million loan was extended to Collingwood Holdings LLC, and that those entities later sold their shares are based on his compelled testimony.  But the SEC had demonstrated that it was already and independently aware prior to Sidhu's testimony of the entities and their transactions, including that Rayat had loaned more than $1 million to Collingwood and that he had sold RenovaCare shares to Treadstone in exchange for preferred shares.  Dkt. No. 104 at 9–10.

[9] Bhogal's claim that the SEC negotiated for his testimony in bad faith likewise is meritless.  The Staff of the SEC was under no obligation to tell Bhogal that he would be named as a defendant until the Commission made the decision that he should be made a defendant.  Importantly, the SEC did not take Bhogal's testimony under false pretenses.

[10] Additional defendant Sidhu moves to file a surreply, asserting (without citation) that a *Kastigar* hearing is "clearly warranted" in this case.  Dkt. Nos. 106, 106-1, at 4 (citing *Kastigar*

Finally, "judicial efficiency weighs in favor of allowing the amendment."  *A.V.E.L.A.*, 34 F. Supp.3d at 318.  The evidence cited in the Amended Complaint against the Defendants would likely all be admissible in a trial of the Complaint.  The claims against the Proposed Defendants arise out of the identical transactions as the claims against Defendants.  There are few, if any, facts that would be relevant to the defense of the Proposed Defendants that would not also have some probative value with respect to the claims of the Defendants.  It therefore is appropriate and efficient that the amendment be permitted and that all of the claims be tried together.

Various of the Proposed Defendants also argue that amendment should be denied because it would be futile; according to them, the Amended Complaint fails to state a claim for relief. Dkt Nos. 93-1 at 12–13, 96 at 4 n.7.  The Court will address those arguments when, and if, a motion to dismiss or for judgment on the pleadings is made.  *See*, *e.g.*, *Intercloud Sys., Inc. v. Integration Partners Corp.*, 2017 WL 11570456, at *1 (S.D.N.Y. July 31, 2017) (postponing decision on the futility of an amended complaint until the receipt of a "fully briefed motion to dismiss"); *Bryant v. Steele*, 64 F. Supp. 3d 441, 446 (E.D.N.Y. 2014) (allowing defendants to "formally move to dismiss" with respect to the futility of an amendment to ensure that the issue is "more fully briefed").

## CONCLUSION

The motions of the Proposed Defendants to intervene are GRANTED.  The SEC's motion to amend the complaint and join the parties is GRANTED.  Bhogal's out-of-time motion for reconsideration of the Court's August 8, 2022 Order and Decision is DENIED as moot. Sidhu's motion for leave to file a surreply is DENIED.

---

*v. United States*, 406 U.S. 441, 461–62 (1972)).  The request is premature and the motion at Dkt. No. 106 is denied.

The Clerk of Court is respectfully directed to close Dkt. Nos. 85, 92, 97, 99, 106.


SO ORDERED.


Dated: August 24, 2022
      New York, New York
                                            LEWIS J. LIMAN
                                United States District Judge